**Larry MARTIN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 149, 2012.**

Supreme Court of Delaware.

Submitted: Nov. 19, 2012.
Decided: Feb. 4, 2013.

Santino Ceccotti, Office of the Public Defender, Wilmington, Delaware for appellant.

Josette D. Manning and Sean P. Lugg (argued), Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

STEELE, Chief Justice.

In this appeal, we consider whether a Superior Court judge's decision to admit a blood analysis report without the testing chemist's testimony violated Defendant–Appellant's Sixth Amendment confrontation rights. Here, the testifying laboratory manager who ultimately certified the report testified before the jury, but the manager neither observed nor performed the test. We hold that the absent analyst's testimonial representations were admitted for their truth on an issue central to the case, which violated the Defendant's right to confront the witnesses against him. Accordingly, we must reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Facts

On January 8, 2011, Delaware State Police Trooper David Diana pulled over Defendant–Appellant Larry Martin for speeding and erratic driving. After administering field sobriety tests, Diana took Martin back to the troop in order to collect a blood sample. The State sent the blood sample to the toxicology lab at the Office of the Chief Medical Examiner (OCME) for drug testing.

Heather Wert, an OCME chemist, analyzed Martin's blood sample, but did not testify at Martin's jury trial. Instead, Jessica Smith, OCME's Chief Forensic Toxicologist and toxicology laboratory's manager, testified. Smith explained that the laboratory conducted an initial and confirmatory screening on Martin's blood sample. Wert performed both of those tests; an initial reviewer reviewed the results of both tests, and then Smith received the batch packets including the results from both tests for final certification and review. Smith testified that she did not observe Wert perform the analysis, but instead customarily relied on Wert to follow the standard operating procedure Smith develops and approves as laboratory manager. Smith detailed how Wert would have performed a confirmatory screening via gas chromatograph mass spectrometry.[1] Smith, after reviewing the results in the batch packet, prepared a written report certifying that Martin's blood tested positive for phencyclidine (PCP). The State entered Smith's certified report into evidence through her live testimony.

### B. Procedural History

A grand jury indicted Martin on February 14, 2011, charging him (in pertinent part) with Driving a Vehicle While Under the Influence or with a Prohibited Drug Content. On December 8, 2011, Martin moved *in limine* to exclude the State's proffered forensic reports in the absence of the testimony of the analyst who performed the tests. The trial judge denied the motion in a December 20, 2011 letter opinion.[2] A two-day jury trial began on

1. According to Smith, if Wert properly follows the established protocol, she first notes the samples that are flagged in the laboratory's spreadsheet for confirmatory testing for phencyclidine (PCP). Wert then generates a chain of custody worksheet, retrieves the batch of samples, performs the extractions, places the final products into the machine, allows the machine to run, and processes the data. Finally, Wert prints out the data for all of the samples into a batch report.

2. *State v. Martin*, 2011 WL 7062499 (Del.Super. Dec. 20, 2011).

January 12, 2012, and, on January 13, 2012, the jury found Martin guilty on all counts.

## II. STANDARD OF REVIEW

We review *de novo* whether the trial judge's decision to deny the motion *in limine* violated Martin's right to confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Delaware Constitution.[3]

## III. ANALYSIS

 The Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment,[4] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."[5] In *Crawford v. Washington*, the U.S. Supreme Court held that the Confrontation Clause applies to witnesses who bear testimony against the accused.[6] Thus, testimonial statements against a defendant are "inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."[7]

We recognize that substantial uncertainty exists about whether a particular statement is "testimonial" or otherwise triggers the Confrontation Clause. In *Crawford*,

the U.S. Supreme Court identified the basic contours of "testimonial" statements:

> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," [and] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[8]

The U.S. Supreme Court again addressed the meaning of "testimonial" in *Melendez–Diaz v. Massachusetts*.[9] In *Melendez–Diaz*, the prosecution introduced notarized "certificates of analysis" describing the results of forensic testing performed by Massachusetts State Laboratory Institute analysts.[10] Because the fact at issue was whether the substance that the defendant possessed was cocaine, and the certificates stated that the substance was in fact cocaine, the Court held that the

3. *Hall v. State*, 788 A.2d 118, 123 (Del.2001) (citing *Warren v. State*, 774 A.2d 246, 251 (Del.2001)). Martin does not argue that the Delaware Constitution affords greater protection than the Sixth Amendment to the U.S. Constitution. Therefore, we limit our analysis to the U.S. Constitution. *See Stafford v. State*, 59 A.3d 1223, 1231 (Del.2012) (citations omitted).

4. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)).

5. U.S. Const. amend. VI.

6. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (citation omitted).

7. *Melendez–Diaz*, 557 U.S. at 309, 129 S.Ct. 2527 (citing *Crawford*, 541 U.S. at 54, 124 S.Ct. 1354).

8. *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354 (citations omitted).

9. 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

10. *Id.* at 308–09, 129 S.Ct. 2527.

certificates were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' "[11] The Court held that the "affidavits were testimonial statements, and the analysts were 'witnesses' for the purposes of the Sixth Amendment."[12]

The U.S. Supreme Court returned to the subject of the Confrontation Clause once again in *Bullcoming v. New Mexico.*[13] In *Bullcoming,* the police arrested the defendant on charges of driving while intoxicated.[14] In order to prove Bullcoming's blood alcohol concentration at trial, the prosecution submitted a forensic laboratory report certifying Bullcoming's blood alcohol concentration as a business record.[15] Instead of calling the analyst who signed the certification, who was on unpaid leave for undisclosed reasons, the prosecution "called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on Bullcoming's blood sample."[16] The testifying analyst and the certifying analyst both worked for the New Mexico Department of Health's Scientific Laboratory Division.[17] The U.S. Supreme Court held that the testifying analyst in *Bullcoming* provided "surrogate testimony" and the accused had the right to confront the analyst who made the certification.[18] The Court held that "the formalities attending the 'report of blood alcohol analysis' [were]

more than adequate to qualify [the testing—certifying analyst's] assertions as testimonial."[19]

As part of its analysis in *Bullcoming,* the U.S. Supreme Court noted that the operation of a gas chromatograph machine requires "specialized knowledge and training" and that human error can occur at several points during the testing process.[20] Furthermore, the testifying analyst "could not convey what the [testing—certifying analyst] knew or observed about the events his certification concerned, *i.e.,* the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part."[21] The U.S. Supreme Court noted that the testing—certifying analyst's "testimony under oath would have enabled Bullcoming's counsel to raise before a jury questions concerning [the analyst's] proficiency, the care he took in performing his work, and his veracity."[22]

Justice Sotomayor, while joining *Bullcoming's* majority opinion, wrote separately for two reasons: (1) to emphasize that she viewed the report as testimonial because its primary purpose was evidentiary, and (2) "to emphasize the limited reach of the Court's opinion."[23] Justice Sotomayor, in her concurrence, carefully distinguished at least two factual circumstances not present in *Bullcoming.* First, she noted that "this is not a case in which the

11. *Id.* at 310–11, 129 S.Ct. 2527 (quoting *Davis v. Washington,* 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (emphasis omitted)).

12. *Id.* at 311, 129 S.Ct. 2527.

13. *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

14. *Id.* at 2709.

15. *Id.* at 2712.

16. *Id.* at 2709.

17. *Id.* at 2710, 2712.

18. *Id.* at 2710.

19. *Id.* at 2717.

20. *Id.* at 2711.

21. *Id.* at 2715 (footnote omitted).

22. *Id.* at 2715 n. 7.

23. *Id.* at 2719 (Sotomayor, J., concurring).

person testifying is a supervisor, reviewer, or someone else with a personal, albeit limited, connection to the scientific test at issue." [24] She further clarified that "[i]t would be a different case if, for example, a supervisor who *observed* an analyst conducting a test testified about the results or a report about such results," but that she "need not address what degree of involvement is sufficient because here [the testifying analyst] had no involvement whatsoever in the relevant test and report." [25]

Second, she noted that *Bullcoming* "is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence." [26] She further clarified that the Court "would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence." [27]

The U.S. Supreme Court attempted to further illuminate the contours of the Confrontation Clause in *Williams v. Illinois,* where the defendant was charged with, among other things, aggravated criminal sexual assault. [28] During the defendant's bench trial, the prosecution called three experts to testify about two DNA profile reports, one produced by the State, and one produced by an outside laboratory, Cellmark. [29] Cellmark produced a DNA profile from the contents of the victim's rape kit. [30] The State produced a DNA profile from the defendant's blood sample collected during an unrelated August 2000 arrest. [31] While two state forensic scientists testified about the state police lab tests, no one from the Cellmark lab testified. [32] The third expert testified that, based on her comparison of the state DNA profile and the Cellmark DNA profile, the defendant could not be excluded as a match, and she also testified to the odds of the Cellmark DNA profile appearing in the general population. [33] "The Cellmark report itself was neither admitted into evidence nor shown to the factfinder," the testifying expert neither quoted nor read from the report, and she did not identify the report as the source of any of her opinions. [34]

The precise holding of *Williams* is less than clear (and not only to us). [35] Justice Alito, joined by Chief Justice Roberts and Justices Kennedy and Breyer (the plurality), held that two independent bas-

24. *Id.* at 2722.

25. *Id.* (emphasis added).

26. *Id.*

27. *Id.*

28. *Williams v. Illinois,* — U.S. —, 132 S.Ct. 2221, 2229, 183 L.Ed.2d 89 (2012) (plurality opinion).

29. *Id.* at 2227, 2229.

30. *Id.* at 2227, 2229–30.

31. *Id.* at 2227, 2229.

32. *Id.* at 2227.

33. *Id.* at 2230.

34. *Id.*

35. *See, e.g., People v. Lopez,* 55 Cal.4th 569, 147 Cal.Rptr.3d 559, 286 P.3d 469, 483 (2012) (Liu, J., dissenting) (citing *Williams,* — U.S. —, 132 S.Ct. 2221, 183 L.Ed.2d 89) ("The nine separate opinions offered by this court in the three confrontation clause cases decided today reflect the muddled state of current doctrine concerning the Sixth Amendment right of criminal defendants to confront the state's witnesses against them. The United States Supreme Court's most recent decision in this area produced no authoritative guidance beyond the result reached on the particular facts of that case.").

es supported their conclusion that the defendant's confrontation rights were not violated: (1) because an expert can express an opinion based on facts the expert assumes but does not know to be true, the expert's testimony that Cellmark's DNA profile was produced from the victim's rape kit was not offered to prove the truth of the matter asserted and did not fall within the Confrontation Clause's scope,[36] and (2) even if the Cellmark report had been admitted for its truth, it was not testimonial because the report "is very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach," having been produced before a suspect was identified and for the purpose of finding an at-large, unknown rapist.[37] As part of its analysis of the first point, the *Williams* plurality emphasized that the case involved a *bench trial*: "[t]he dissent's argument would have force if petitioner had elected to have a jury trial" because "there would have been a danger of the jury's taking [the expert witness's] testimony as proof that the Cellmark profile was derived from the sample obtained from the" victim.[38]

Justice Thomas did not join the *Williams* plurality, but rather wrote separately to concur only in the judgment, "*solely* because Cellmark's statements lacked the requisite formality and solemnity to be considered testimonial for purposes of the Confrontation Clause."[39] Otherwise, he shared "the dissent's view of the plurality's flawed analysis."[40] Justice Thomas explicitly stated "that Cellmark's statements were introduced for their truth,"[41] directly disagreeing with the plurality's first basis for affirming. Justice Thomas also sharply criticized the plurality's alternative basis, the "new primary purpose test," and instead applied his own framework for analyzing whether a statement is testimonial.[42]

Justice Kagan, joined by Justices Scalia, Ginsburg, and Sotomayor, dissented, concluding that admission of the substance of the Cellmark report violated the defendant's confrontation rights.[43] The dissent rejected the plurality's primary purpose test[44] and held that "the Cellmark report [wa]s a testimonial statement."[45] The dissent argued that when "the State elected to introduce the substance of Cellmark's report into evidence, the analyst who generated that report became a witness whom Williams had the right to confront."[46] The dissent concluded the Court's prior cases decided the issue:

> Like the surrogate witness in *Bullcoming*, [the testifying analyst] could not convey what [the testing analyst] knew or observed about the events …, *i.e.*, the particular test and testing process

---

36. *Williams*, 132 S.Ct. at 2228 (plurality opinion).

37. *Id.*

38. *Id.* at 2236.

39. *Id.* at 2255 (Thomas, J., concurring) (emphasis added) (citation omitted) (internal quotation marks omitted).

40. *Id.*

41. *Id.* at 2262, 2261–64.

42. *Id.* at 2255.

43. *Id.* at 2265 (Kagan, J., dissenting).

44. *Id.* at 2273.

45. *Id.*

46. *Id.* at 2268 (quoting *Bullcoming v. New Mexico*, —— U.S. ——, 131 S.Ct. 2705, 2716, 180 L.Ed.2d 610 (2011)) (internal quotation marks omitted).

he employed. Nor could such surrogate testimony expose any lapses or lies on the testing analyst's part. Like the lawyers in *Melendez–Diaz* and *Bullcoming,* Williams's attorney could not ask questions about that analyst's proficiency, the care he took in performing his work, and his veracity. He could not probe whether the analyst had tested the wrong vial, inverted the labels on the samples, committed some more technical error, or simply made up the results.[47] The dissent also notes that "five Justices agree, in two opinions reciting the same reasons, that ... [the] statements about Cellmark's report went to its truth." [48]

Justice Breyer, although he joined in the plurality opinion, concurred separately to note that neither the plurality, nor the dissent, nor any of the Court's earlier opinions squarely addressed the question of how the Confrontation Clause applies "to the panoply of crime laboratory reports and underlying technical statements written by (or otherwise made by) laboratory technicians." [49] In discussing the issue, Justice Breyer identified the question raised in this case: In a multitechnician scenario, "[w]ho should the prosecution have had to call to testify? Only the analyst who signed the report noting the match? What if the analyst ... knew nothing about either the laboratory's underlying procedures or the specific tests run in the particular case?" [50] Raising the possibility that it is unclear whether "all potentially involved laboratory technicians"

might have to testify, Justice Breyer noted that "[s]ome or all of the words spoken or written by each technician out of court might well have constituted relevant statements offered for their truth and reasonably relied on by a supervisor or analyst writing the laboratory report." [51]

We believe the facts in the instant case fall most closely under *Bullcoming.* However, as Justice Breyer noted, *Bullcoming* does not precisely answer the question in our case. In this case, unlike in *Bullcoming,* the certifying analyst testified. However, she neither participated in nor observed the test on Martin's blood sample. She only reviewed the data and conclusions of the chemist who actually performed the test.

As Justice Breyer also noted, *Williams* does not directly address the multitechnician scenario either. *Williams* is distinguishable because it was a *bench trial,* unlike Martin's jury trial (a fact the plurality found critical). Although no one connected with the report at issue in *Williams* testified, in Martin's jury trial the testifying witness supervised the lab in question, reviewed earlier work, and signed the certifying report.

We hold that Wert's test results contained in the batch report are testimonial. The U.S. Supreme Court in *Bullcoming* rejected the proposition that conclusions drawn from a gas chromatograph machine are mere transcriptions requiring no interpretation and no independent judgment.[52]

---

47. *Id.* at 2267. The dissent later identified some of the most important questions a defendant would want to ask an analyst: "How much experience do you have? Have you ever made mistakes in the past? Did you test the right sample? Use the right procedures? Contaminate the sample in any way?" *Id.* at 2275.

48. *Id.* at 2268 (citation omitted).

49. *Id.* at 2244, 2244–45 (Breyer, J., concurring).

50. *Id.* at 2247.

51. *Id.*

52. *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 2714–15, 180 L.Ed.2d 610 (2011).

The Court held that "the analysts who write reports that the prosecution introduces must be made available for confrontation." [53] We recognize that for the purpose of determining whether Wert's batch reports are testimonial, the instant case falls somewhere between *Bullcoming* and *Williams.*

*Bullcoming* declares that the certifying witness must testify, but *Bullcoming* also seems to contemplate that the certifying witness must either observe or perform the test. [54] The majority in *Bullcoming* held that the testifying witness, although another state forensic scientist in the same laboratory division, was a "surrogate" because he could not convey what the testing-certifying analyst knew or observed about the particular test, the testing process, or any lapses or lies about the test process by the certifying analyst. [55] In Martin's case, the certifying witness did testify, but she had no personal knowledge about the analyst's (Wert's) actions nor did she observe the particular test. She could only rely on Wert's representations in the batch report.

In *Williams,* the Cellmark report "was neither admitted into evidence nor shown to the factfinder." [56] The witness "did not quote or read from the report" and she did not "identify it as the source of any of the opinions she expressed." [57] However, five U.S. Supreme Court Justices, in concurrence and dissent, found that the underlying report was admitted for the truth of the matter asserted. [58] As the dissent noted, when "the State elected to introduce the substance of Cellmark's report into evidence [through the witness's testimony], the analyst who generated that report became a witness whom [the defendant] had the right to confront." [59]

Wert's batch reports were not submitted into evidence. However, Smith relied on Wert's reports, conclusions, and notes in order to certify that Martin's blood contained PCP. [60] We conclude that the State introduced the substance of Wert's statements during Smith's testimony. We further conclude that Wert's representations and test results comprise the underlying conclusions supporting Smith's report, which also was admitted into evidence. We rely on *Williams* to reach the conclusion that Wert's representations and conclusions were admitted for their truth, particularly in light of the fact that this case was a jury trial. [61]

Turning to whether the statements were testimonial, we rely on *Bullcoming* to reach the conclusion that Wert's underlying statements and representations in the batch report are testimonial. [62] "A docu-

**53.** *Id.* at 2715.

**54.** *Id.* at 2715–16.

**55.** *Id.* at 2715 (citations omitted).

**56.** *Williams,* 132 S.Ct at 2230.

**57.** *Id.*

**58.** *Id.* at 2256 (Thomas, J., concurring); *id.* at 2268 (Kagan, J., dissenting).

**59.** *Id.* at 2268 (Kagan, J., dissenting) (quoting *Bullcoming,* 131 S.Ct. at 2716) (internal quotation marks omitted).

**60.** Smith testified that Wert makes notations on checklists about the procedures she followed, processes the data the machine generates, tells the machine to print, and generates a batch packet with the results. *State v. Martin,* Cr. ID No. 1101005435, at 101–03, 115–16 (Del.Super. Jan. 12, 2012) (TRANSCRIPT).

**61.** *See supra* notes 38, 58 and accompanying text.

**62.** While we rely primarily on *Bullcoming,* it seems that a majority of the U.S. Supreme Court would come to that conclusion as well under *Williams,* albeit through different rationales. *Williams* does not clearly address the

ment created solely for an 'evidentiary purpose,' *Melendez–Diaz* clarified, made in aid of a police investigation, ranks as testimonial." [63] Smith's report and testimony essentially conclude that Wert's test proved Martin's blood contained PCP. Although Smith generated the report and signed it, she prepared her conclusions by relying on Wert's test results and Wert's representations in the batch report. The U.S. Supreme Court has held that interpreting the results of a gas chromatograph machine involves more than evaluating a machine-generated number.[64] As the majority in *Bullcoming* stated, "[t]hese representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination." [65] An analyst's certified report is "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " [66] As the majority in *Bullcoming* noted, a proper witness would be able to testify to her "proficiency, the care [s]he took in performing h[er] work, and h[er] veracity," and be subject to cross examination about any of her lapses or lies concerning the testing process.[67] Here, the State produced the note-taking laboratory supervisor, Smith, who certified the unsworn hearsay testimony of the testing analyst, Wert, instead of having the testing analyst certify the report and be available for cross examination. The U.S. Supreme Court in *Davis v. Washington* made clear that that the Confrontation Clause does not tolerate this kind of evasion.[68]

Because we hold that Wert's statements were both testimonial and admitted for the truth of the matter, this is one of the

---

issue of whether the statements are testimonial. The plurality's primary purpose test would likely fail because Wert ran the test in order to create evidence for use at trial that Martin's blood contained PCP, which would make the statements testimonial under that theory. *See Williams*, 132 S.Ct. at 2243 (plurality opinion). However, the five other Justices sharply criticized that approach. *See supra* notes 42, 44 and accompanying text. The *Williams* dissent would likely find these statements testimonial as well. *See supra* notes 46–47 and accompanying text (discussing what questions the defendant should be able to ask the witness). Justice Thomas would likely not find the statements formal enough to be testimonial. *Williams*, 132 S.Ct. at 2260 (Thomas, J., concurring).

63. *Bullcoming v. New Mexico*, —— U.S. ——, 131 S.Ct. 2705, 2716, 180 L.Ed.2d 610 (2011) (citing *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)).

64. *Id.* at 2710–11, 2715. For example, as indicated by Smith's testimony, absence of a notation in the batch report indicates the testing analyst observed nothing abnormal about the test, *assuming* the analyst followed the laboratory's operating protocols about nota-

tions. *State v. Martin*, Cr. ID No. 1101005435, at 101–03 (Del.Super. Jan. 12, 2012) (TRANSCRIPT).

65. *Bullcoming*, 131 S.Ct. at 2714 (addressing similar silence in a "remarks" section of a forensic report).

66. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310–11, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (quoting *Davis v. Washington*, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (emphasis omitted)).

67. *Bullcoming*, 131 S.Ct. at 2715 n. 7, 2715.

68. *Davis v. Washington*, 547 U.S. 813, 826, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ("In any event, we do not think it conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman recite the unsworn hearsay testimony of the declarant, instead of having the declarant sign a deposition."); *see also Bullcoming*, 131 S.Ct. at 2715 (citing *Melendez–Diaz*, 557 U.S. at 334, 129 S.Ct. 2527 (Kennedy, J., dissenting) ("The Court made clear in *Davis* that it will not permit the testimonial statement of one witness to enter into evidence through the in-court testimony of a second.")).

factual circumstances, identified by Justice Sotomayor in her concurrence in *Bullcoming*, as: "a case in which an expert witness was asked for h[er] independent opinion about underlying testimonial reports that were not themselves admitted into evidence."[69] As Justice Sotomayor noted, "determin[ing] the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence" is not the question the U.S. Supreme Court faced in *Bullcoming*.[70] Here, unlike the testifying analyst in *Bullcoming*, Smith supervised the laboratory and signed the certification on the report submitted into evidence. However, like the testifying analyst in *Bullcoming*, Smith merely reviewed Wert's data and representations about the test, while having knowledge of the laboratory's standard operating procedures, without observing or performing the test herself. Particularly here where the State presented critical evidence to a jury, the defendant had a

right guaranteed by the Sixth Amendment to confront the analyst who performed the test in order to determine her proficiency, care, and veracity.[71]

The U.S. Supreme Court very clearly held in *Bullcoming* that the defendant must be able to confront the certifying analyst when her report is submitted into evidence.[72] We now hold that the defendant has the right to confront the testing analyst as well, where the certifying and testing analyst are not the same person and the certifying analyst does not observe the testing process.[73] While this may be a burden on prosecutors, the Constitution demands it.[74] Because there was no evidence that Wert was unavailable or that the defendant had the opportunity to cross examine her prior to trial, the trial judge erred by denying the motion *in limine*. Because we find the results of the test and the representations concerning the testing process were not merely cumulative evidence, but the principal factor in Martin's conviction, the error is not harmless.[75]

69. *Bullcoming*, 131 S.Ct. at 2722 (Sotomayor, J., concurring).

70. *Id.*

71. *See id.* at 2715 n. 7 (majority opinion).

72. *Id.* at 2715 (citation omitted).

73. The Court of Appeals of Maryland, in a 2011 opinion that the U.S. Supreme Court vacated and remanded for consideration in light of *Williams*, came to a similar conclusion that the testifying analyst must at least observe the test underlying his report. *See Derr v. State*, 422 Md. 211, 29 A.3d 533, 559 (2011), *vacated*, — U.S. ——, 133 S.Ct. 63, 183 L.Ed.2d 700 (2012), *remanded to* No. 6 (2010 Term) (oral argument held on January 4, 2013). We have considered *Williams* and reach a similar conclusion to the Court of Appeals of Maryland.

74. One solution to the inconvenience of having two state chemists testify would be to have the testing analyst prepare and certify her own report. It is also possible that defen-

dants may stipulate to the contents of a report or the testimony of the chemist, thus negating the need for the chemist to be cross examined. *See* Brief of Law Professors as *Amici Curiae* in Support of Petitioner at 10–13, *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (No. 07–591). While the constitutionality of the statute is not at issue in this case, we note the General Assembly may have in place a notice-and-demand statute that might permit defendants to waive their confrontation rights if they do not object to notice that the prosecution intends to enter a forensic report in a timely fashion. *See* 10 *Del. C.* §§ 4330–4332; *see also* Brief of Law Professors, *supra*, at 13–15. U.S. Supreme Court Justices have mentioned these types of statutes approvingly. *See Bullcoming*, 131 S.Ct. at 2718 (Part IV of the Court's opinion, in which Justices Sotomayor, Kagan, and Thomas did not join).

75. *Sanabria v. State*, 974 A.2d 107, 120 (Del. 2009).

## IV. CONCLUSION

The judgment of the Superior Court is REVERSED and the action is REMANDED for proceedings consistent with this opinion.