IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| APRIL MILLIGAN, | § | |
| | § | No. 173, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court of the |
| | § | State of Delaware in and for |
| v. | § | Sussex County |
| | § | |
| STATE OF DELAWARE, | § | No. 1310009696 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: May 6, 2015
Decided: June 10, 2015


Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court.   **AFFIRMED**.


Michael R. Abram, Esquire, Law Office of Michael R. Abram, Georgetown, Delaware, for Appellant.

Kathryn J. Garrison, Esquire, Department of Justice, Georgetown, Delaware, for Appellee.

**VAUGHN**, Justice:

Defendant-Below/Appellant April Milligan appeals her convictions of Driving Under the Influence and Improper Lane Change. Milligan raises two claims on appeal. First, she claims that the Superior Court erred by admitting documentation relating to the chain of custody in the absence of live testimony, which she contends violated her right to confront her accusers as guaranteed by the Sixth Amendment to United States Constitution[1] and Section 7 of the Delaware Constitution.[2] Specifically, she argues that in order for a blood test to be admitted, all of those who took possession of the blood sample, regardless of whether it was packaged at the time, must testify at trial. Second, Milligan claims that the Superior Court abused its discretion by allowing the State to introduce the results of her blood draw without first establishing a proper foundation. We find no merit to these claims and affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 12, 2013, a motorist called 911 after noticing a split telephone pole, plastic debris on the side of the road, and a damaged car in the middle of a

---

[1] In pertinent part, the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

[2] In pertinent part, article I, section 7 of the Delaware Constitution states that "[i]n all criminal prosecutions, the accused hath a right . . . to meet the witnesses in their examination face to face." Del. Const. art. I, § 7. Because Milligan does not argue that the Delaware Constitution affords greater protection than the Sixth Amendment, we limit our analysis to the U.S. Constitution. *See Stafford v. State*, 59 A.3d 1223, 1231 (Del. 2012) (citations omitted).

nearby field. Paramedics and Trooper Jordan Rollins responded to the call. After being extricated from the car, Milligan was transported to Nanticoke Memorial Hospital. Trooper Rollins secured a search warrant for a blood draw and watched as a phlebotomist, Lewis Purcell, drew Milligan's blood.

Once the blood draw was complete, Trooper Rollins transported the blood kit to Troop 5, where he sealed it and put it in an evidence refrigerator. The kit was transported to the Delaware State Police Crime Lab on September 18, 2013, where it was received by Deborah Louie. At the lab, the blood kit was retrieved by Juliann Willey, the crime lab director, so that she could perform an analysis of the blood. Willey signed the Chemical Test Report located inside the blood kit, but did not sign the Chain of Possession Log located on the outside of the kit. Willey did, however, testify that the blood kit was sealed when she took possession of it. Milligan's blood test revealed a blood alcohol content ("BAC") of 0.15 percent.

Prior to testing the blood sample, control samples were prepared and run through the chromatograph to ensure the machine was working properly.[3] Willey testified that these samples may be prepared by any chemist or lab technician in the

---

[3] "One of the more effective types of instruments used for modern chemical analyses is the *chromatograph*. A chromatograph is capable of *separating* multiple contaminants or *analytes* that may be present in the same sample, thus preventing potential interferences in identifying and detecting the compounds of interest." *Env. Sci. Deskbook* § 3:43 (2015) (emphasis in original).

laboratory, and that she could not remember whether she prepared the control samples used in Milligan's test.[4]   She did, however, testify that she analyzed the results to ensure that they were reliable.

In November 2013, Milligan was charged by indictment with a third offense of Driving Under the Influence, Failure to Have Insurance Card in Possession, and Improper Lane Change. At trial, the State introduced the blood analysis report prepared by Willey. The State also introduced two other documents in order to prove the blood sample's chain of custody: (1) the Chain of Possession Log, which was located on the outside of the blood kit, and (2) the Chemical Test Report,[5] which was located inside the blood kit (collectively, the "Documents"). Trooper Rollins, Willey, and the phlebotomist that drew Milligan's blood also testified regarding the blood sample's chain of custody. At the end of the one-day jury trial, Milligan was found guilty of Driving Under the Influence and Improper Lane Change.   This appeal followed.

---

[4] The record  is unclear as to who prepared the samples used in Milligan's blood test.
[5] The Chemical Test Report contained the following information: (1) the name of the test subject (Milligan), (2) the type of case (DUI), (3) the type of sample (blood), (4) the person taking sample (Lewis Purcell),  (5) the investigating officer (Trooper Rollins), (6) where the sample was received from (Delaware State Police Crime Lab), (7) who received the sample (Deborah Louie), the date and time taken, (8) the kit number, (9) the expiration date, (10) the results of the analysis (0.15 BAC), (11) the police agency or Troop (Troop 5), (12) the name of the witness, (13) the complaint #, (14) the citation #, and (15) the signature of the analyst (Willey).  (A28)

## II. DISCUSSION

We review a trial court's ruling admitting or excluding evidence for abuse of discretion.[6] "If we conclude that there was an abuse of discretion, we must then determine whether there was significant prejudice to deny the accused of his or her right to a fair trial."[7] Alleged constitutional violations relating to a trial court's evidentiary rulings are reviewed *de novo*.[8]

### Delaware's Chain of Custody Law

"In general, Delaware's chain of custody law requires that the State authenticate the evidence proffered and eliminate the possibilities of misidentification and adulteration, not to an absolute certainty, but simply as a matter of reasonable probability."[9] Procedures for establishing chain of custody in a Driving Under the Influence ("DUI") case are governed by 10 *Del. C.* § 4331 and 21 *Del. C.* § 4177(h)(3). 10 *Del. C.* § 4331(1) defines "chain of custody" to include:

> [i] the seizing officer; [ii] the packaging officer, if the packaging officer is not also the seizing officer; and [iii] the forensic toxicologist or forensic chemist or other person who actually

---

[6] *Fuller v. State*, 860 A.2d 324, 329 (Del. 2004) (citing *Howard v. State*, 549 A.2d 692, 693 (Del. 1988)).

[7] *Johnson v. State*, 878 A.2d 422, 425 (Del. 2005) (citing *Seward v. State*, 723 A.2d 365, 372 (Del. 1999)).

[8] *Smith v. State*, 913 A.2d 1197, 1234 (Del. 2006) (citing *Flonnory v. State*, 893 A.2d 507, 515 (Del. 2006)).

[9] *Demby v. State*, 695 A.2d 1127, 1131 (Del. 1997) (citing *Tatman v. State*, 314 A.2d 417, 418 (Del. 1973)).

5

touched the substance and not merely the outer sealed package in which the substance was placed by the law-enforcement agency before or during the analysis of the substance.[10]

21 *Del. C.* § 4177(h)(3) sets forth chain of custody requirements specific to the charge of DUI:

> For purposes of establishing the chain of physical custody or control of evidence defined in this section which is necessary to admit such evidence in any proceeding, a statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is *prima facie* evidence that the person had custody and made the delivery stated, without the necessity of a personal appearance in court by the person signing the statement, in accordance with the same procedures outlined in § 4331(3) of Title 10.[11]

In this appeal, Milligan does not dispute that the State presented all witnesses necessary to establish chain of custody under Delaware law. Instead, she argues that Delaware's chain of custody law is unconstitutional, as it interfered with her right to confront all of those who took possession of her blood sample.

---

[10] 10 *Del. C.* § 4331(1).
[11] 21 *Del. C.* § 4177(h)(3). 10 *Del. C.* § 4331(3) similarly requires each successive person in the chain of custody to sign a statement, and does not require their personal appearance in court. § 4133(3) states, in pertinent part:

> [A] statement signed by each successive person in the chain of custody that the person delivered it to the other person indicated on or about the date stated is *prima facie* evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement.

The Sixth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment,[12] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[13]

In *Crawford v. Washington*, the United States Supreme Court held that the Confrontation Clause guarantees a defendant the right to confront all of those who bear testimony against him.[14] Testimonial statements against a defendant are "inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."[15] Thus, before deciding whether a statement violates the Confrontation Clause, it must first be determined whether a statement is testimonial in nature. The *Crawford* Court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of

---

[12] *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)).

[13] U.S. Const. amend. VI.

[14] *Crawford v. Washington*, 541 U.S. 36, 51 (2004). *Crawford* involved a tape-recorded statement to police in which the defendant's wife described the defendant stabbing the victim with a knife. The Washington Supreme Court found that the statement bore the necessary indicia of reliability and permitted its admission. In reversing the decision, the United States Supreme Court abrogated prior controlling precedent and found that the statement violated the Confrontation Clause. The Court held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54, 60.

[15] *Melendez-Diaz*, 557 U.S. at 309 (citing *Crawford*, 541 U.S. at 54).

establishing or proving some fact,"[16] and provided the following basic contours of

testimonial statements:

> [E]x parte in-court testimony or its functional equivalent—that
> is, material such as affidavits, custodial examinations, prior
> testimony that the defendant was unable to cross-examine, or
> similar pretrial statements that declarants would reasonably
> expect to be used prosecutorially, extrajudicial statements . . .
> contained in formalized testimonial materials, such as affidavits,
> depositions, prior testimony, or confessions, statements that were
> made under circumstances which would lead an objective witness
> reasonably to believe that the statement would be available for
> use at a later trial.[17]

Five years after *Crawford* was decided, the Supreme Court considered the

Confrontation Clause implications of admitting sworn certificates of forensic

analysts. In *Melendez-Diaz v. Massachusetts*, the trial court allowed certified lab

reports indicating the weight and identity of cocaine to be admitted into evidence.[18]

The defendant was convicted and his convictions were affirmed by the state appeals

courts.[19] The Supreme Court, by a 5-4 vote, vacated the defendant's conviction, with

the majority determining that the "certificates of analysis" were "incontrovertibly a

---

[16] *Crawford*, 541 U.S. at 51 (citations and quotations omitted).

[17] *Id.* at 51-52 (citations and quotations omitted). The Supreme Court later elaborated on its definition of testimony in *Davis v. Washington*, 547 U.S. 813 (2006). In *Davis*, the Supreme Court found that a statement is testimonial if: (1) the circumstances objectively indicate there is no ongoing emergency, and (2) the statement is made in response to an interrogation which has the primary purpose of establishing or proving events relevant to later criminal prosecution. *Id.* at 822.

[18] *Melendez-Diaz*, 557 U.S. at 309.

[19] *Id.*

'solemn declaration or affirmation made for the purpose of establishing or proving some fact,'" and were thus testimonial in nature.[20]  The Court observed that certificates of analysis were functionally identical to live in-court testimony, doing "'precisely what a witness does on direct examination,'"[21] and that the analysts who authored them were witnesses for Sixth Amendment purposes.[22]  The Court, citing its decision in *Crawford*, held that "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be confronted with the analysts at trial."[23]

The Court was also careful, however, to reject the notion that the prosecution must call everyone whose testimony is relevant to establishing the chain of custody, the authenticity of the sample, or the accuracy of the testing device used to perform the analysis.  The Court stated:

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.  While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody, . . . ." this does not mean that everyone who laid hands on the evidence must be called.  As

---

[20] *Id.* at 310 (quoting *Crawford*, 541 U.S. at 51).
[21] *Id.* at 310-11 (quoting *Davis*, 547 U.S. at 830).
[22] *Melendez-Diaz*, 557 U.S. at 311.  Justice Scalia, writing for the majority, emphasized that"under Massachusetts law, the *sole purpose* of the affidavits was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance."  *Id.*
[23] *Id.* (emphasis in original) (internal quotations omitted).

stated in the dissent's own quotation, . . . "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.[24]

The Supreme Court once again addressed the scope of the Confrontation Clause in *Bullcoming v. New Mexico*.[25] In *Bullcoming*, the defendant was on trial for driving under the influence, and objected to the prosecution's attempt to admit a blood alcohol content analysis report through the testimony of an analyst who did not perform or observe the defendant's blood test.[26] Following the reasoning set forth in *Melendez-Diaz*, the Court held that the admittance of "a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification

---

[24] *Id.* at 311 n.1. (emphasis in original).

[25] *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). In *Bullcoming*, the Supreme Court granted *certiorari* on the following question:

> Does the Confrontation Clause permit the prosecution to introduce a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or observe the performance of the test reported in the certification. [sic]

*Id.* at 2713.

[26] *Id.* at 2709. The prosecution offered the report as a business record without calling the report's author, who was unavailable because he was on unpaid sick leave. Instead, the prosecution called another analyst, who testified and was cross-examined on the general practices and procedures of the testing office. *Id.* at 2711-12.

or perform or observe the test reported in the certification," violates a defendant's rights under the Confrontation Clause.[27]

Although the BAC report in *Bullcoming* was unsworn, the Court found it to be testimonial because it was created solely for an evidentiary purpose.[28] The Court emphasized that the forensic laboratory report at issue did more than merely report a "machine-generated number;"[29] the report verified that the lab had received the blood sample intact with the seal unbroken, that the testing analyst performed a particular test in accordance with a specific protocol, and that nothing affected the integrity of the sample or the validity of the analysis.[30] The Court concluded that these representations, "relating to past events and human actions not revealed in raw, machine-produced data, are [meant] for cross-examination."[31]

In a concurring opinion, Justice Sotomayor emphasized the narrow scope of the majority's decision and reaffirmed the proposition that not all of those in the chain of custody are required to provide live testimony. In so doing, Justice Sotamayor cited the relevant language of *Melendez-Diaz* and stated: "[Not] every person noted on the BAC report must testify."[32]

---

[27] *Bullcoming*, 131 S. Ct. at 2710, 2715.
[28] *Id.* at 2717.
[29] *Id.* at 2714.
[30] *Id.*
[31] *Bullcoming*, 131 S. Ct. at 2714.
[32] *Id.* at 2721 n.2 (Sotomayor, J., concurring).

11

Most recently, in *Martin v. State*, this Court had occasion to address the scope of the Confrontation Clause in light of the Supreme Court's decisions in the aforementioned cases.[33] In *Martin*, the Superior Court allowed the prosecution to admit a blood analysis report through the testimony of laboratory manager who certified the report but neither observed nor performed the testing.[34] On appeal, we held that the trial court's decision to admit the report without the testing analyst's testimony violated the defendant's Sixth Amendment confrontation rights.[35] We reasoned:

> [L]ike the testifying analyst in *Bullcoming*, [the laboratory manager] merely reviewed [the testing analyst's] data and representations about the test, while having knowledge of the laboratory's standard operating procedures, without observing or performing the test herself. Particularly here where the State presented critical evidence to a jury, the defendant had a right guaranteed by the Sixth Amendment to confront the analyst who performed the test in order to determine her proficiency, care, and veracity.[36]

*The Admission of the Documents Did Not Violate the Confrontation Clause*

Milligan argues that the introduction of the Documents in accordance with 21 *Del. C.* § 4177(h)(3)[37] violated her rights under the Sixth Amendment Confrontation

---

[33] *Martin v. State*, 60 A.3d 1100, 1109 (Del. 2013).
[34] *Id.* at 1101.
[35] *Id.* at 1109-10.
[36] *Id.* at 1109.
[37] 21 *Del. C.* § 4177(h)(3).

Clause. Specifically, she contends that the admittance of the Documents, which purported to show the chain of possession of her blood sample, conflicted with the United States Supreme Court's decision in *Melendez-Diaz*.[38] She argues that every individual who possessed her blood sample was required to provide live in-court testimony.[39]

We find Milligan's first claim to be unpersuasive. First, and most obvious, Milligan's argument contradicts the plain language of *Melendez-Diaz*, which provides that not every individual who may have relevant testimony for the purpose of establishing chain of custody must appear in person as part of the prosecution's case.[40] This language, which is specifically cited by Milligan, unambiguously states

[38] *Melendez-Diaz,* 557 U.S. 310-11.

[39] Although Milligan concedes at one point in her Opening Brief that the State need not offer testimony of every single person in the chain of custody, that is nonetheless what she is seemingly arguing on appeal. *See* Appellant's Op. Br. at 2 ("[Delaware's chain of custody law] clearly violates the confrontation clause as it dose not afford the Defendant the opportunity to cross examine the people that have taken possession of the evidence.").

[40] *Melendez-Diaz,* 557 U.S. at 311 n.1. A number of other courts have also interpreted the *Melendez-Diaz* decision to stand for the proposition that not all individuals in the chain of custody must testify. *See, e.g.*, *United States v. Ortega*, 750 F.3d 1020, 1025-26 (8th Cir. 2014) ("[C]hain of custody alone does not implicate the Confrontation Clause.") (citations and quotations omitted); *United States v. Young*, 510 F. Appx. 610, 611 (9th Cir. 2013) ("[T]he absence of chain-of-custody testimony [does not] implicate the Confrontation Clause.") (citing *Melendez-Diaz*, 557 U.S. at 311 n.1.); *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012) ("[W]e find that the notations on the lab report by technician Schneider indicating when she checked the methamphetamine samples into and out of the lab—while relevant to the question of chain of custody—were not the kind of testimonial statements offered or admitted to prove the truth of the matter asserted.") (quotations omitted); *Vann v. State*, 229 P.3d 197. 211 (Alaska Ct. App. 2010) ("As noted in the *Melendez-Diaz* footnote, and as confirmed by Alaska cases on this subject, Evidence Rule 901 does not require the State to bring forward every witness who had custody of, or contact with, the physical evidence in question, nor does it require the State to affirmatively negate every conceivable possibility of mishandling or

13

that not everyone who "laid hands" on the evidence need testify to satisfy the Confrontation Clause.[41] We believe Milligan's claim falls squarely within the scope of this rule.[42] In short, Milligan's reading of *Melendez-Diaz* directly conflicts with the very language that she cites.[43] The Sixth Amendment Confrontation Clause does not require each and every individual who possessed the evidence to provide live testimony in order to establish chain of custody.

Additionally, *Melendez-Diaz* and the other cases relied upon by Milligan are factually distinguishable from the case at bar and provide minimal support for her contention that her Confrontation Clause rights were violated. *Melendez-Diaz*, *Bullcoming*, and *Martin* all addressed situations in which a forensic report was admitted to prove evidentiary facts at issue other than, or in addition to, chain of

---

tampering.").

[41] *Melendez-Diaz*, 557 U.S. at 311 n.1. At trial, Milligan's counsel answered in the affirmative when he was asked by the court if he believed that *Melendez-Diaz* stood for the proposition that everyone who touched the evidence must testify. Appellant's Op. Br. App. at A7.

[42] Appellee's Ans. Br. App. at B47-51. Milligan also seems to contend that all of those whose testimony may be relevant in establishing the accuracy of the testing device must provide live testimony to satisfy the Confrontation Clause. This argument is similarly foreclosed by the express language of *Melendez-Diaz*. *Melendez-Diaz*, 557 U.S. at 311 n.1 ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing . . . accuracy of the testing device, must appear in person as part of the prosecution's case.").

[43] *See* Appellant's Op. Br. at 8 (citing *Melendez-Diaz*, 557 U.S. at 311 n.1). Should all of the individuals in the chain of custody be required to appear in court, then even routine chain of custody representations would be at risk of becoming unnecessarily tedious. To broaden the Confrontation Clause to such an extent would not only conflict with the Supreme Court's specific language in *Melendez-Diaz,* but also discourage prosecutorial efficiency and deter judicial economy.

custody.[44] It was on those separate grounds that the plaintiffs' Confrontation Clause challenges focused. For example, in *Melendez-Diaz*, the reports were admitted to prove the weight and identity of the cocaine, and it was on those grounds that the plaintiff's claimed his constitutional rights were being violated.[45] Similarly, in *Martin*, the report was entered into evidence to show that the defendant tested positive for phencyclidine.[46] Here, the Documents, as conceded by Milligan, were offered into evidence for the sole purpose of proving chain of custody.[47]

Moreover, unlike those cases, which involved one or more absent certifying or testing analysts, the testing and certifying analyst in this case testified and was subject to cross-examination by the defense. Willey explained in detail the process used to test Milligan's blood and testified to the results of the analysis at trial, where the defense was provided a full opportunity to cross-examine her. For these reasons, we reject Milligan's first claim and find that her rights under the Confrontation Clause were not violated.

---

[44] In addition to chain of custody information, the Chemical Test Report also contains Milligan's BAC level. Milligan, however, concedes that the report was admitted solely to prove chain of custody and does not contest the fact that Willey was the certifying and testing analyst with regard to the test. In other words, Milligan only contests the admittance of the chain of custody information found within the Documents.

[45] *Melendez-Diaz*, 557 U.S. at 308-09.

[46] *Martin*, 60 A.3d at 1101.

[47] Appellant's Op. Br. at 10 ( "[The] documents [were] used solely to prove the chain of custody in a criminal matter.").

*The Trial Court Did Not Abuse Its Discretion by Admitting the Blood Test Results*

Apart from her attack on the constitutionality of the chain of custody statute, Milligan claims that the trial court abused its discretion by allowing the results of her blood test to be admitted into evidence before a proper foundation had been established. Milligan points to the following incidents to support her argument: Willey's failure to sign the Chain of Possession Log; Louie's signing of the Chemical Test Report, which was located inside the sealed blood kit; Willey's failure to specifically recall testing Milligan's blood sample; the incorrect date on the autosampler loading list; and the possibility that control samples may have been created by a technician other than Willey. We will address each of these issues in turn.

First, Milligan argues that Willey's failure to sign the Chain of Possession Log resulted in a broken chain of custody. The Chain of Possession Log shows that the blood kit was received at the crime lab by Louie on September 18, 2013, at 1:45 p.m. The next required signature on the Chain of Possession Log would have been Willey's, which would have been required after removing the blood kit from the evidence refrigerator for testing. Willey did not sign the Chain of Possession Log, but she did testify in court that she removed the blood kit from the crime lab evidence refrigerator and that the seal was intact. Thus, Milligan's argument that Willey did

not sign the Chain of Possession Log is inconsequential.

Second, Milligan argues that the blood kit could not have been sealed when Willey received it because the Chemical Test Report, which Louie signed, was located inside the sealed blood kit and could only have been accessed after the seal was broken. But Willey explained in court that after she opened the kit, she would permit the employee who received the kit (here, Louie), to transpose information to the Chemical Test Report. This plausible explanation was accepted by the trial court, and Milligan has failed to put forth any meritorious reason as to why it should not be accepted on appeal. Thus, Milligan's second argument fails.

Third, Milligan argues that the blood analysis report should not have been admitted into evidence because Willey did not specifically recall her analysis of the blood sample. In *Demby v. State*, the testimony of two police officers relating to chain of custody "reflected an incomplete recollection of the events that transpired following their receipt" of a controlled substance from the defendant.[48] There, this Court stated:

> We have never interpreted [Delaware's chain of custody law] as requiring the State to produce evidence as to every link in the chain of custody. Rather, the State must simply demonstrate an orderly process from which the trier of fact can conclude that it is improbable that the original item has been tampered with or

---

[48] *Demby*, 695 A.2d at 1129.

exchanged.[49]

We concluded that "any inconsistency in the authenticity testimony presented by the State in this case affected the weight and not the admissibility of the evidence presented."[50]

Similar to the police officers in *Demby*, Willey's incomplete recollection of events would affect the weight, and not the admissibility of the evidence. Thus, the trial court did not abuse its discretion by allowing the blood analysis into evidence despite Willey's inability to specifically recall testing Milligan's blood sample.

Fourth, Milligan argues that the wrong date on the autosampler loading list clouded the credibility of the test results. Willey testified that she performed the blood analysis on September 18, 2013. The date on the autosampler loading list was September 19, 2013. Willey testified that the list is prepared by a laboratory technician prior to the start of the analysis. When asked why the list bore the wrong date, Willey explained that the technician who prepared the list only worked until 3 p.m. and would often prepare lists that were to be run the next day. Willey testified that in this case, the technician likely prepared the list believing that Willey would not be using the samples until the next day. After the technician left for the day,

---

[49] *Id.* at 1131 (citing *Tricoche v. State*, 525 A.2d 151, 153 (Del. 1987)).
[50] *Id.* at 1127.

however, Willey decided to begin the sample run.

Willey provided a reasonable explanation for the erroneous date and Milligan has failed to offer any evidence that the mistake affected the results of the test or prejudiced her in any way. Accordingly, the trial court's decision to admit the blood results despite the incorrect date was not an abuse of discretion.

Finally, Milligan argues that the validity of the blood test results are questionable because Willey could not recall whether she or another technician had prepared the control samples used to calibrate the chromatograph. This argument is also meritless. Although Willey may not have personally prepared the control samples, she reviewed the results of the testing and found them to be reliable.

For all of the preceding reasons, we conclude that a proper foundation was established for the admission of Milligan's blood test results.

### III. CONCLUSION

The judgment of the Superior Court is **AFFIRMED**.