# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOEL R. STEVENSON, | § | |
| | § | No. 36, 2016 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1407001616 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: September 28, 2016
Decided: October 11, 2016

Before **HOLLAND**, **VALIHURA**, and **SEITZ**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, Attorney for Defendant-Below, Appellant.

Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware, Attorney for Plaintiff-Below, Appellee.

**HOLLAND**, Justice:

Defendant-Below/Appellant, Joel Stevenson, appeals from a final judgment for convictions of Unlawful Sexual Contact First Degree;[1] Unlawful Sexual Contact Second Degree;[2] and two counts of Sex Offender Unlawful Sexual Conduct with a Child.[3] Stevenson argues on appeal that the trial court abused its discretion in admitting, over defense counsel's objection, the out-of-court consistent videotaped statements of three child witnesses in rebuttal to the defense's alleged charge of the State's improper influence over the child witnesses' trial testimony. Specifically, Stevenson argues that the trial court committed reversible error by admitting the videotaped statements presented by the State in rebuttal because the statements: (1) were not admissible under Delaware Uniform Rules of Evidence ("D.R.E.") 801(d)(1)(B) because defense counsel made no charge of improper influence; (2) were not admissible under 11 *Del. C.* § 3507 because of their cumulative nature; and (3) should have been redacted before being admitted into evidence.

We have concluded that Stevenson's arguments are without merit. The record reflects that, in light of their cumulative nature, the State did not seek to introduce the children's prior out-of-court statements during its case-in-chief, pursuant to 11 *Del. C.* § 3507. However, once defense counsel began to challenge the child

---

[1] 11 *Del. C.* § 769.
[2] 11 *Del. C.* § 768.
[3] 11 *Del. C.* § 777A.

2

witnesses' testimony on cross-examination, it became entirely appropriate for the State to admit the videotaped statements in rebuttal to show that the children were not coached. The trial judge gave defense counsel the opportunity to review the redacted statements for further redaction and defense counsel approved the redacted videotapes without objection. Therefore, defense counsel waived Stevenson's opportunity to challenge the issue of redaction on appeal.

*Facts*

In June 2014, 13-year-old B.W., her then 9-year-old sister, A.O., and her then 11-year-old brother, J.O.,[4] traveled from Oklahoma to Newark, Delaware to stay with their Grandma Marni.[5] Stevenson is Grandma Marni's son who lived with her in Delaware. At the time of the children's June 2014 visit, Stevenson was a registered sex offender. The children had previously spent time during summers with Grandma Marni, and none of the children ever had any problems with Stevenson.

Although the children usually slept in the guestroom upstairs, on the night of June 28, 2014, Grandma Marni had houseguests occupying the guestroom. That night, B.W. and J.O. slept on opposite sofas in the living room downstairs and A.O. slept on a sofa in the adjacent sunroom. Before going to sleep, B.W.—who was

---

[4] Pseudonyms have been assigned for the child witnesses.
[5] Grandma Marni is the children's mother's grandmother through marriage.

already uncomfortable because Stevenson had made a comment to J.O. about B.W.'s developing body—asked J.O. to keep an eye on A.O. in the sunroom. J.O., while using the computer in the sunroom as A.O. slept, noticed Stevenson "hovering" over A.O. J.O. went to the living room, told B.W. what he observed, and then returned to the sunroom to continue watching over A.O. until Stevenson was gone and J.O. went to sleep on the couch in the living room.

Later that night, A.O. was awakened by Stevenson "poking" at her vaginal area, from the outside of her pajama pants, with his finger. A.O. got up from the sofa and went to the computer to play a game. When Stevenson sat down next to A.O., she went upstairs and got in bed with her Grandma Marni.

B.W. was also awakened by Stevenson touching her that night. B.W. had been wearing a tank top and bra to sleep in. When B.W. was awakened, her clothes were pulled down to her stomach and Stevenson was touching her breasts. As soon as Stevenson saw that B.W. was awake, he ran upstairs. B.W. saw J.O. sleeping on the other sofa in the living room but did not see her younger sister, A.O., sleeping on the sofa in the sunroom.

B.W. texted her mother, Melinda Wade, about Stevenson touching B.W. Wade, however, did not respond because she was asleep back in Oklahoma. B.W. later told Grandma Marni what had happened. A.O. also told Grandma Marni what Stevenson had done to her.

4

On July 2, 2014, police arrested Stevenson. That same day, B.W., A.O., and J.O. each made statements to police regarding the underlying incidents. The police videotaped the statements. A grand jury indicted Stevenson—first on August 18, 2014, and then by a superseding indictment on July 20, 2015—on one count of Unlawful Sexual Contact First Degree;[6] one count of Unlawful Sexual Contact Second Degree;[7] and two counts of Sex Offender Unlawful Sexual Conduct with a Child.[8]

### Prior Statements Admitted

Stevenson's first trial began on March 31, 2015. However, on April 1, 2015, the trial judge declared a mistrial on grounds that the two charges of Sex Offender Unlawful Sexual Conduct with a Child should have been severed. On May 12, 2015, upon the State's motion, the trial judge ordered a bifurcated trial.

On August 4, 2015, a jury trial began on the charges of first and second degree unlawful sexual contact; the first phase of the bifurcated trial. During its case in chief, the State presented the testimony of B.W., A.O., and J.O.—each under the age of 18—and the testimony of their mother, Melinda Wade. Each child testified at trial, almost verbatim with their pre-trial statements. Therefore, in light of their

---

[6] 11 *Del. C.* § 769.
[7] 11 *Del. C.* § 768.
[8] 11 *Del. C.* § 777A.

5

cumulative nature, the State did not seek to introduce the children's pre-trial videotaped statements during its case-in-chief, pursuant to 11 *Del. C.* § 3507. However, after considering defense counsel's cross-examination of Wade and each of the child witnesses, the State moved to admit the out-of-court videotaped statements under 11 *Del. C.* § 3507 and/or D.R.E. 801(d)(1) as relevant to rebut defense counsel's insinuation that the State improperly influenced the witnesses' testimony.

Defense counsel objected to admitting the videotaped statements on the basis that they contained cumulative evidence which only served to bolster the witnesses' testimony. The trial judge ruled that the statements were admissible for three reasons: first, defense counsel touched upon the videotaped statements in its cross-examinations, making the statements relevant; second, the statements were admissible under D.R.E. 801(d)(1) as prior consistent statements presented to rebut defense counsel's suggestion of improper influence; and third, the statements were admissible under 11 *Del. C.* § 3507.

The trial judge did not indicate if admission of the statements was proper based on the aggregate of the three reasons or if each reason was an independent ground for the admission of the statements. In making its ruling, the trial court noted its authority to exercise reasonable control over the mode and order of interrogating

witnesses and presenting evidence under D.R.E. 611(a).[9] Thereafter, the State recalled each child witness to retake the stand, laid a foundation for the admission of each child's videotaped statement, and then played the statements for the jury.

### *Verdict and Sentence*

On August 6, 2015, the jury found Stevenson guilty of both the first and second degree charges of unlawful sexual contact. Thereafter, during the second phase of the bifurcated trial, the parties stipulated to Stevenson's status as a registered sex offender at the time of the underlying incidents. The jury then found Stevenson guilty of the remaining two charges of Sex Offender Unlawful Sexual Conduct with a Child.

On January 8, 2016, the trial judge sentenced Stevenson to a total of 61 years at Level V incarceration suspended after 50 years. Stevenson filed a notice of appeal to this Court.

### *Standard of Review*

Where an objection was raised at trial, this Court reviews "a trial court's ruling admitting or excluding evidence for abuse of discretion."[10] If we conclude that the

---

[9] D.R.E. 611(a) provides, "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

[10] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015); *Manna v. State*, 945 A.2d 1149, 1153 (Del. 2008).

7

trial court abused its discretion, reversal is only required if "'there was significant prejudice to deny the accused of his or her right to a fair trial.'"[11] Absent an objection at trial, this Court reviews an evidentiary issue only if the ruling constitutes plain error affecting substantial rights.[12] We review *de novo* claims of constitutional violations relating to a trial court's evidentiary rulings.[13] Evidentiary issues that are affirmatively waived are not reviewable on appeal.[14]

### Defense Counsel "Opened the Door"

The trial judge first reasoned that admission of the videotaped statements was proper because defense counsel had "opened the door" to their introduction by focusing on the videotapes during the cross-examination of the State's witnesses.[15] The trial judge found that because the videotapes "were touched on a lot in cross," defense counsel had put the videotapes "into play."

---

[11] *Milligan*, 116 A.3d at 1235 (quoting *Johnson v. State*, 878 A.2d 422, 425 (Del. 2005)). *See also* D.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

[12] Del. Supr. Ct. R. 8; D.R.E. 103(d); *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[13] *Milligan*, 116 A.3d at 1235 (citing *Smith v. State*, 913 A.2d 1197, 1234 (Del. 2006)).

[14] *See King v. State*, 239 A.2d 707, 708 (Del. 1968) (explaining difference between the failure to object and an affirmative waiver).

[15] A45 ("I think [trial counsel] opened the door to the videotapes. I was sitting here during the cross-examination and there was a discussion *at length with each of the witnesses* as to the videotapes, not only their own videotape but the videotapes of others . . . . And if some party wished to say . . . the defense has opened the door with respect to the videotapes . . . the defense has made it relevant, I think there's a good argument to that effect.") (emphasis added).

8

Stevenson does not seriously dispute the trial judge's finding of relevance. Stevenson makes only one reference to relevance in his Corrected Opening Brief, arguing: "[The trial court] erroneously found the out-of-court statements admissible because [trial] counsel's cross examination made the statements relevant . . . ."

Delaware law "recognizes the evidentiary principle of 'opening the door.'"[16] "The 'opening the door' theory is premised upon considerations of fairness and the truth-seeking function of a trial."[17] "Put simply, 'opening the door' is a way of saying one party has injected an issue into the case, and the other party should be able to introduce evidence to explain its view of that issue."[18]

The record reflects that the trial judge did not abuse his discretion when he found that Stevenson had "opened the door" to the relevance of the videotaped statements. The first mention of a videotape, in general, was by defense counsel during his opening statement, in which he stated that "a memory is not a videotape."[19] Then, during cross-examination of the State's first witness—Melinda Wade, the children's mother—defense counsel inquired as to whether Wade watched the videotaped statements.[20] Thereafter, defense counsel questioned each

---

[16] *Smith*, 913 A.2d at 1239.
[17] *Id.*
[18] *Id. See also Tucker v. State*, 1986 WL 17446, at *1 (Del. Sept. 12, 1986) ("The rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage.").
[19] A13.
[20] A18.

of the child witnesses on cross-examination as to their review of the videotaped statements with the State in preparation for trial. Accordingly, the record supports the trial judge's finding that Stevenson's defense counsel had put the videotaped statements "into play."

Nevertheless, the fact that defense counsel "opened the door" to the videotaped statements is not an independent ground for their automatic admission into evidence. The United States Supreme Court explained in *Tome v. United States*,[21] the fact "[t]hat certain out-of-court statements may be relevant does not dispose of the question whether they are admissible."[22] Here, as the State acknowledged,[23] the relevant, videotaped statements contained cumulative evidence because they provided essentially verbatim the same information as the in-court testimony of each child witness. In *Richardson v. State*,[24] this Court noted, in *dicta*, where "witnesses testified *in detail* [almost verbatim] about the same incidents reported to the . . . interviewer, the [interview] tapes would appear to be cumulative and subject to being excluded on that ground."[25]

---

[21] 513 U.S. 150 (1995).
[22] *Id.* at 164.
[23] A43.
[24] 43 A.3d 906 (Del. 2012).
[25] *Id.* at 909 (emphasis added).

10

## *Admissibility Under D.R.E. 801(d)(1)(B)*

To distinguish the *Richardson dicta*, the State argued, and the trial judge agreed, that admission of the relevant, videotaped statements was proper under D.R.E. 801(d)(1)(B)—even if they were almost verbatim to the witnesses' direct trial testimony—because "there was clearly a notion of improper influence that was brought up [by trial counsel]" during cross-examination of the State's witnesses.[26]

Under the Delaware Uniform Rules of Evidence, hearsay evidence is inadmissible unless subject to an exception. D.R.E. 801(d)(1)(B) provides that a prior statement by a witness is not hearsay if "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony *and is offered to rebut an express or implied charge against him of* recent fabrication or *improper influence* or motive."[27]

In this case, the witnesses testified at trial, were subject to cross-examination, and their out-of-court statements were consistent with their in-court testimony. Stevenson, however, argues that two of the requirements of D.R.E. 801(d)(1)(B) were not satisfied in this case. First, Stevenson argues that there was no charge of improper influence. Second, Stevenson argues that even if there was a charge of

---

[26] A44–A45.
[27] D.R.E. 801(d)(1)(B) (emphasis added). *See Tome*, 513 U.S. at 156–57 (citing the Federal Rules of Evidence).

11

improper influence, the out-of-court statements remained inadmissible because they lacked any probative significance as rebuttal evidence.

### *Improper Influence*

In order for a trial court to find a charge of improper influence, there must be "a suggestion that the witness consciously altered his testimony."[28] Stevenson contends that there was no charge by defense counsel of "conscious alteration" and, consequently, no charge of improper influence. Rather, in an attempt to distinguish defense counsel's strategy from alleging a willful alteration of an account of events, Stevenson frames his defense counsel's defense strategy as challenging the memory of each child witness.

In support of this distinction, Stevenson cites the Third Circuit's decision in *United States v. Frazier*.[29] In that case, the Third Circuit warned against using the analogous federal version of D.R.E. 801(d)(1)(B) to "allow the admission of what would otherwise be hearsay every time a [witness'] credibility or memory is challenged" because, under such a practice, "cross-examination would always transform [the prior consistent statement] into admissible evidence."[30] In *Frazier*, the court noted that "[t]he line between challenging credibility or memory and

---

[28] *United States v. Frazier*, 469 F.3d 85, 88 (3d Cir. 2006) (quoting *United States v. Casoni*, 950 F.2d 893, 904 (3d Cir. 1991)).
[29] *Id.*
[30] *Id.* at 89 (internal quotation marks and citations omitted).

12

alleging conscious alteration can be drawn" by determining "whether the cross-examiner's questions reasonably imply [a charge of improper influence]."[31] Stevenson relies on defense counsel's opening statement to suggest that defense counsel meant only to challenge the children's memory:

> Ladies and gentlemen, you are being asked to determine the truth of the events that occurred at the Stevenson household in June of 2014, about a year ago. *The goal of discovering the truth of past events can be hampered by a process that occurs when human beings attempt to acquire information, to retain it and then to retrieve it, because a memory is not a videotape.*
>
> . . .
>
> And we trust that after you . . . listen objectively to the evidence, *and consider the fallibility of perception and memory and trying to recreate things a year after they happen,* we're going to ask that you acquit Mr. Stevenson of these charges.[32]

However, an examination of the entire record[33] does not support Stevenson's argument for four reasons. First, Stevenson's characterization of defense counsel's defense strategy considers only portions of the record. Indeed, some parts of the record tend to show that defense counsel sought to challenge the fallibility of the children's memory but other parts of the record, and the record as a whole, illustrate

---

[31] *Id.*

[32] A13 (emphasis added).

[33] *See United States v. Asher*, 854 F.2d 1483, 1499 (3d Cir. 1988) (reviewing the entire record to determine whether there had been a charge of fabrication).

13

an argument that the children's fallible memories were improperly influenced by the State. For example, a different portion of defense counsel's opening statement explained:

> You're going to hear [B.W.], you're going to hear [A.O.], and you're going to hear [J.O.], they're going to identify Mr. Stevenson. They're going to be sincere, they're going to be sympathetic, they're going to appear certain. But [the defense] will show that the *circumstances of the events and processes that lead us here today will make it difficult for you to believe their testimony* beyond a reasonable doubt.[34]

Second, at side-bar during cross-examination of Melinda Wade, the children's mother, defense counsel confirmed that its defense strategy would be aimed at attacking all of the witnesses' testimony as having been improperly influenced:

> [Defense Counsel]: I'll tell the court where I'm going. I want to get into the, quote, [p]reparation slash coaching, because I think of the witnesses, because I know that's what occurred - -
>
> The Court: Just be careful, counsel.[35]

Third, defense counsel's cross-examination of the State's witnesses attempted to exploit the "events and processes" used by the State in preparing the witnesses, i.e., allowing the children to watch their videotaped statements and coaching the

---

[34] A13 (emphasis added).
[35] A16.

14

witnesses' testimony. For example, defense counsel's cross-examination of Wade began:

> [Defense Counsel]: Ms. Wade, when did you and the children arrive here in Delaware for this trial?
>
> [Wade]: Yesterday night.
>
> [Defense Counsel]: About what time?
>
> [Wade]: About nine-ish.
>
> [Defense Counsel]: Since that time have you met with Lisa [Rapko, a social worker at the Attorney General's Office] or anybody else from the Attorney General's Office to prepare about testifying today?
>
> [Wade]: Yes.
>
> [Defense Counsel]: And when did you meet with people from the Attorney General's Office?
>
> [Wade]: Last night and this morning.[36]

Defense counsel then questioned Wade about her conversation the night before trial with the State prosecutor and social worker regarding Wade's in-court testimony. Specifically, defense counsel asked:

> [Defense Counsel]: And did, was there any discussion about what they were going to ask you?
>
> [Wade]: Yes.
>
> [Defense Counsel]: And did they tell you what to say?

---

[36] A17–A18.

15

[Wade]:  No.

[Defense Counsel]:  Okay.  Did they show you any videotapes?

[Wade]:  No.

. . .

[Defense Counsel]:  Did there come a time where they brought the children up to the room?

[Wade]:  Yes.

[Defense Counsel]:  And did [the prosecutor] or [the social worker], or both of them talk to your children?

[Wade]:  Yes.

[Defense Counsel]:  Did they do that one at a time or all together?

[Wade]:  One at a time.

[Defense Counsel]:  And were you present when they talked to your children?

[Wade]:  No.

[Defense Counsel]:  Okay.  So you don't know what the discussion was?

[Wade]:  No.[37]

---

[37] A18.

16

Defense counsel continued with a similar line of questioning as to Wade's conversation on the morning of trial with the State prosecutor and social worker regarding Wade's in-court testimony.[38] As the State points out in a footnote of its Answering Brief,[39] the trial transcript of the cross-examination of Wade includes more than 50 questions concerning the State's trial preparation of Wade and her children.

Defense counsel then asked questions of this nature during cross-examination of each child witness. For example, the State called B.W. as its second witness. This time, the State asked about the videotaped statements:

> [The State]: [B.W.], this morning did you watch a videotape of yourself?
>
> [B.W.]: Yes.
>
> [The State]: And on the videotape were you talking to Detective Burse?
>
> [B.W.]: Yes.
>
> [The State]: And you watched that [videotape] this morning to prepare for trial?
>
> [B.W.]: Yes.
>
> [The State]: Okay. This incident happened last year?
>
> [B.W.]: Yes.

---

[38] A18–A19.
[39] Ans. Br. at 8 n.5.

17

[The State]: Right. So like a little more than a year ago?

[B.W.]: Yeah.

[The State]: Do you feel like you remember what happened last year during that incident pretty well?

[B.W.]: Yeah.

Nevertheless, defense counsel further explored the videotaped statements on cross-examination, asking a number of questions about exactly what B.W. had discussed with the State prosecutor and social worker, including:

- And so you knew today the questions she asked you over here, you knew she was going to ask you because she asked you those same questions today, right?

- Did she ever have you – when you answered it, did she ever – when she asked you a question did she ever suggest to you what an appropriate answer might be?

- And did she help you prepare the answer?

- Did she coach you on how, on the type of questions I was going to ask you?

- Did she talk specifically about what your testimony was going to be?

During a break after defense counsel's cross-examination of B.W., the State informed the trial court that it intended to call the social worker to rebut the fact that

18

"the jury has been left with the impression that the witnesses have been coached."[40]
The trial court instructed defense counsel not to use the word "coach."

Fourth, after the admission of the videotaped statements, defense counsel's closing argument continued to pursue the improper influence strategy. Defense counsel argued in closing that the jury should not believe the testimony of the three children and attacked the children's "means of knowledge" about the crimes. Specifically, defense counsel argued:

> And then we look at means of knowledge. Means of knowledge, part of it is, well, [the children] were there, they got knowledge from being there. Other means of knowledge [include], talking to each other about [the crimes], and that affecting [their] memory and [their] perception. Means of knowledge of the questioning through the officer, the taped statement. There was a taped statement [and] whenever there was an inculpatory statement, you heard the officer repeat it, reinforcing it in the child's mind. At the end of the case [the officer] recapped everything to reinforce it, I suggest. And so you have that as a means of knowledge.
>
> You have the means of knowledge of talking to [their] family about [the crimes] [and] the means of knowledge of talking to the Attorney General's Office and their staff when [the children] came here a day or two ago. And speaking at night and then coming in and speaking about [the crimes], or looking at the tape in the morning, and the tape kind of reminding them or reinforcing really what [the State] wants [the children] to say. So those things relate to means of knowledge.

---

[40] A30.

19

So the kids aren't coming here fresh speaking independently without having any, not having considered this in the past year, they've had the officer, they've had their family, they've had staff from the Attorney General's Office, and they've had the tape. So when they testify here, are they testifying about what they saw on the tape, or are they testifying independently based upon their knowledge?

Defense counsel used his closing argument to connect his contention that the children's testimony was not credible to the fact that each had watched his or her videotaped statement and had been coached by the State.

Despite Stevenson's attempt to reframe the record as challenging the witnesses' memory, the trial transcripts are replete with examples of questions and statements by defense counsel that could reasonably be taken by a jury as implying that the State improperly influenced the children's testimony.[41] Accordingly, the record supports the trial court's finding of a charge of improper influence by defense counsel.

### Rebuttal Evidence Probative

Stevenson next argues that even if defense counsel insinuated a charge of improper influence, the videotaped statements remained inadmissible under D.R.E. 801(d)(1)(B) because the statements did not rebut that charge. Rather, according to Stevenson, the statements did nothing more than repeat what the children said on a

---

[41] *See Frazier*, 469 F.3d at 89.

prior occasion. Stevenson's characterization of the videotaped statements as mere repetitive statements disregards the fact that "by definition, a prior consistent statement inherently repeats [some] evidence that has already been heard at trial."[42] The videotaped statements, albeit cumulative, were used by the State to rebut defense counsel's strategy of attacking the children's credibility based on allegations of the State's improper influence. The State relied on the videotaped statements in its closing argument to respond to those very allegations:

> Now, there was some suggestion that the Department of Justice influenced the testimony of these witnesses. Well, ladies and gentlemen, you heard testimony from [the State social worker] that no representative from the Department of Justice spoke to those children until March 31, 2015. That is nearly nine months after they spoke to the police and made the statements that they did on those tapes. And you can compare those statements, and ask yourselves, are they consistent? Does it sound coached? Did [the children] say essentially the same things? And you will have to determine whether or not you find those statements credible.[43]

Similarly, the State argued in its rebuttal:

> The events happened June 28th; the children are interviewed on July 2nd. Then there's no contact between the Department of Justice . . . with those children until March 31st of 2015.
>
> . . .

---

[42] *Adams v. State*, 124 A.3d 38, 46 (Del. 2015).
[43] A66.

21

> There's also a suggestion that the officer recapped what the children said [in their videotaped statements] and that that reinforced their memory. But, again, you watched the tapes, didn't [the children] say it first? [The children] came up with those words.[44]

The record reflects that defense counsel charged improper influence and that the State used the videotaped statements to rebut that charge. Accordingly, the trial judge correctly ruled that the videotaped statements were admissible under D.R.E 801(d)(1)(B). Therefore, it is unnecessary to address the admissibility of the statements as rebuttal evidence under 11 *Del. C.* § 3507.

### *Redaction of Videotaped Statements*

Stevenson's final argument on appeal is that the redacted versions of the videotapes contained unduly prejudicial statements regardless of whether the videotaped statements were admissible under D.R.E. 801(d)(1)(B) or § 3507. According to Stevenson, the redacted videotapes contained the interviewer's improper endorsements of the children's credibility; interjection of sympathy for the children and showing rapport building; statements evoking bias against Stevenson;

---

[44] A70.

22

and inadmissible hearsay, all of which had no probative value and were unduly prejudicial.[45]

To limit the prejudicial effect of admitting out-of-court statements, Delaware law limits the evidence to "the voluntary out-of-court statement of a witness who is present and subject to cross-examination."[46] That is, "the actual statement of a witness" is what is admissible into evidence.[47] "Accordingly, interrogations that contain both the witness' statements and inadmissible statements by third parties must be redacted. For example, a police officer's personal opinion is generally not admissible evidence at trial and, therefore, may not be admitted as part of a witness' statement . . . . Similarly, an expert witness may not opine on the credibility of a witness generally and, therefore, such opinions are equally inadmissible . . . ."[48]

The videotaped statements admitted to the jury in this case included the interviewer's statements. Nevertheless, as the State correctly asserts on appeal, Stevenson waived this argument before the trial court. As this Court explained in *King v. State*,[49] there is an express and effective waiver as to any appellate presentation on an issue where defense counsel responds to queries by a trial judge,

---

[45] *Id.*
[46] *Stevens v. State*, 3 A.3d 1070, 1072 (Del. 2010).
[47] *Id.* at 1073.
[48] *Id.*
[49] 239 A.2d 707 (Del. 1968).

by stating that there are no objections to the admission of evidence.[50]  Indeed, such affirmative statements are a stronger demonstration of a waiver "than the mere absence of an objection."[51]  Here, the State moved to admit redacted versions of the videotaped statements.  The trial judge took a recess to allow defense counsel and Stevenson the opportunity to review each of the videotapes.  Upon review, defense counsel made no objection to the videotapes:

> [The State]:  Your Honor, all three [videotaped] statements, the redacted versions were played for [trial counsel] and [Stevenson].  I believe there's no objection to them, so long as the appropriate foundation is laid through their testimony.
>
> [Defense Counsel]: That's correct, your Honor.

In his Reply Brief, Stevenson submits that this Court should nonetheless review his claim because the interests of justice require as much.  Specifically, Stevenson submits that the interests of justice mandate this Court's review because the trial judge, in a case based solely on the credibility of the State's witnesses, permitted the jury to hear the State's case nearly three times in two days.

First, Stevenson's reliance on *Shelton v. State*[52] is misplaced because *Shelton* involved a capital defendant, and defense counsel had failed to object to a matter

---

[50] *Id.* at 709.
[51] *Id.* at 708.
[52] 744 A.2d 465 (Del. 1999).

24

that, at that time, was ambiguous under Delaware law.[53] Second, although the interests of justice did mandate our review of Stevenson's claim, our review "can only be accomplished with an accurate record of the proceedings in the [trial] [c]ourt."[54] Rules 9(b)(i) and 14(e) of this Court "direct all parties to order a transcript and to include in their appendix those portions of the record which are relevant to any claims on appeal."[55] Stevenson, as the appellant, had the burden of producing "such portions of the trial transcript as are necessary to give this Court a fair and accurate account of the context in which the claim of error occurred,"[56] and the record "must include a transcript of all evidence relevant to the challenged finding or conclusion."[57]

In the context of this case, Stevenson quotes commentary from the videotaped statements but failed to submit transcripts of the videotaped statements, or the videotapes themselves, for this Court's review. Without the record, this Court cannot exercise appellate review. Accordingly, Stevenson's claim must fail for two reasons: first, defense counsel affirmatively waived this argument; and, second, this Court cannot decide an issue for which no record has been provided.

---

[53] *Id.* at 497 n.142.
[54] *Tricoche v. State*, 525 A.2d 151, 154 (Del. 1987); *see also* Del. Supr. Ct. R. 9(b)(i); Del. Supr. Ct. R. 14(e).
[55] *Tricoche*, 525 A.2d at 154.
[56] Del. Supr. Ct. R. 14(e).
[57] *Id.*

## *Conclusion*

The Superior Court's judgment of convictions is affirmed.