IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AHMIR BAILEY, | § | |
| | § | No. 46, 2021 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. Nos. K1805009348A & B |
| STATE OF DELAWARE | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 8, 2021
Decided: February 16, 2022

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, Delaware, for Appellant, Ahmir Bailey.

Kathryn J. Garrison, Esquire, State of Delaware Department of Justice, Dover, Delaware, for Appellee, State of Delaware.

**VAUGHN**, Justice:

The Appellant, Ahmir Bailey, appeals from Superior Court convictions of Murder in the First Degree and related offenses. His sole claim is that the Superior Court erred by refusing to admit into evidence a witness's juvenile adjudication of delinquency for Carrying a Concealed Deadly Weapon ("CCDW"), and the witness's probationary status resulting therefrom. This error, he claims, violated his constitutional right to confront the witness. For the reasons that follow, we reject Bailey's claim and affirm the decision of the Superior Court.

## FACTS AND PROCEDURAL HISTORY

This case arises from the murder of Jamier Vann-Robinson at an after-prom house party in Dover, Delaware on May 12, 2018. On May 14, 2018, Bailey and codefendant Eugene Riley were arrested in connection with the crime. Bailey was indicted on 16 offenses, including Murder in the First Degree and Attempted Murder in the First Degree. The charges against the defendants were severed so that each could be tried separately. The following evidence was presented at Bailey's trial.

Terrone White, who resided on Cubbage Pond Road in Lincoln, Delaware, testified that his daughter, Caitlyn White, had a child with Bailey. White further testified that two days before Vann-Robinson's death, he noticed that his safe containing "two nines and a .40"[1] (referring to 9mm and .40 caliber firearms) was missing. The safe was later found empty in the backyard of a neighboring home.

---

[1] App. to Opening Brief at A415.

The day before the shooting, a burglary was reported at Dick's Sporting Goods in Dover. Detective Ryan Schmid, the Chief Investigating Officer for the homicide, testified that after Bailey and Riley were taken into custody, they confessed to him that they had stolen 9mm and .40 caliber ammunition from Dick's Sporting Goods.

In the afternoon of May 12, 2018, the day of the murder, a resident of Cubbage Pond Road reported to the police that there were youths firing guns into a field. The responding officer noted a silver Chevrolet Cobalt parked along Cubbage Pond Road. The car belonged to Twanicia Jones, and she testified to being Bailey's girlfriend at the time.

On the night of May 12, 2018, Xavier Gregory, a local DJ, threw an after-prom party for high school students at his home in Dover. Bailey, Jones, and Riley arrived at the party in Jones's Chevrolet Cobalt. After Riley and Bailey exited the vehicle, Vann-Robinson and Dominic Hurley, who attended the party with Vann-Robinson, approached the vehicle and began flirting with Jones. Riley and Bailey took exception to this, and words were exchanged between the parties.

Bailey and the State dispute what occurred next. Hurley testified that after the exchange with Riley and Bailey, he and Vann-Robinson walked back to Vann-Robinson's car. When they arrived back at the car, he heard gunshots. In an interview with Detective Schmid, Bailey claimed that after Vann-Robinson and

Hurley walked back to Vann-Robinson's vehicle, Vann-Robinson reached into the vehicle and took out and cocked a firearm. Bailey maintained that it was Riley who shot Vann-Robinson with the 9mm handgun, and that Bailey merely fired a warning shot into the air with the .40 caliber handgun—despite the fact that the police found six expended .40 caliber shell casings at the scene. Bailey also claimed that he and Riley acted in self-defense. The State claimed that Bailey shot Vann-Robinson in the back with the 9mm handgun, and that the item Vann-Robinson went to retrieve from the vehicle was a knife he kept in the car, not a handgun. Hurley testified repeatedly that neither he nor Vann-Robinson had a handgun that night. However, Hurley told police that Vann-Robinson was looking to fight, and that Vann-Robinson did reach into the car and turn around to return to the confrontation. Initially, Vann-Robinson thought that the shots had missed him, but, in fact, he was shot multiple times in the back while at the driver's side door.

Immediately after Vann-Robinson was shot, Hurley could not locate the keys to the car, and by the time he did, police had arrived at the scene. Instead of engaging with police, who were only feet away, Hurley decided he would drive Vann-Robinson away from the scene. Hurley was apparently so quick to leave that he drove away with Vann-Robinson in the driver's seat of the vehicle and operated the vehicle from the passenger side seat by reaching across to the vehicle's controls. Instead of taking Vann-Robinson straight to the hospital—a trip that would only take

4

a few minutes—Hurley made several stops along the way. He first stopped in a parking lot by a Rite Aid to move Vann-Robinson from the driver's seat to the back seat. He then called his mother and asked her to meet him at Wawa. Hurley drove to Wawa, but then eventually drove to the hospital where his mother met him. These detours placed him at the hospital approximately one hour after leaving the scene of the shooting. By that time, according to the emergency room trauma nurse, Vann-Robinson was not breathing and did not have a pulse.

Hurley admitted that he took this circuitous route because he wanted to avoid the police. When asked why he did not want to engage with police, he testified that he was scared and that he did not want to get "stuck" at the hospital.[2] Hurley testified that the police repeatedly asked him if he or Vann-Robinson had a gun that night, to which he always answered no.

Hurley's web search history from the month of the shooting revealed that he had searched for information on handguns. Hurley claimed to be doing research for a rap song he was writing. It was also revealed that Hurley told police that Vann-Robinson was considering obtaining a gun.

At the beginning of Hurley's testimony, defense counsel indicated that he wanted to present evidence of Hurley's juvenile record for CCDW in 2017 to demonstrate that Hurley's probationary status at the time may have factored into his

---

[2] *Id.* at A804-05.

decision to avoid the police. Bailey also sought to admit this information to show that Hurley was motivated to lie that neither he nor Vann-Robinson had a handgun that night. The State objected to the introduction of Hurley's prior adjudication, citing Delaware Rule of Evidence 609(d), which generally forbids introduction of prior juvenile adjudications.

The Superior Court determined that evidence of Hurley's juvenile adjudication would not be admissible in Bailey's trial, pursuant to Rule 609(d). When deciding whether to admit a juvenile adjudication for impeachment purposes, the trial court must first consider whether a conviction for the offense would be admissible to attack the credibility of an adult, and one of the factors involved in that consideration is whether the crime is one involving dishonesty. The trial court first found that CCDW was "not a crime of moral turpitude."[3] We interpret this statement as a conclusion by the trial court that the crime of CCDW is not a crime involving dishonesty. The court then asserted that the evidence of Hurley's juvenile record was not "necessary for a fair determination of guilt in this case[,]"[4] the second element in a Rule 609(d) analysis. The court stated that Bailey had "other means" at its disposal to "establish [his] defense" of self-defense.[5] The court determined that "evidence that [Hurley] was on probation is not pertinent, doesn't seem to be

---

[3] *Id.* at A718.
[4] *Id.* at A718-19.
[5] *Id.* at A719.

relevant to the issue, nor does it support, in my view, [defense counsel's] theory."[6]

At the crime scene, police retrieved shell casings from .40 caliber and 9mm firearms. Detective Schmid testified that a .40 caliber handgun and ammunition were found in Riley's bedroom, and a 9mm magazine and ammunition were found in Jones's bedroom, where Bailey often stayed. The 9mm handgun was not recovered, and Bailey told police that a friend of his sold the 9mm handgun the day after the incident. A firearms expert testified that the bullets that struck Vann-Robinson could have been fired from a 9mm firearm, but not from a .40 caliber firearm. A DNA analysis of the grip and trigger of the .40 caliber handgun revealed a mixed DNA profile consistent with three individuals, the major contributor being Riley.

The jury was asked to return a verdict on ten counts. It found Bailey guilty of Murder in the First Degree, Attempted Murder in the First Degree (the victim on this count being Hurley), Possession of a Firearm During Commission of a Felony, Shoplifting, and Conspiracy Third Degree. It found him not guilty of Burglary in the Second Degree, three counts of Theft of a Firearm, and one count of Theft. By stipulation, the charges of Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited were severed and tried concurrently as a bench trial. The court found Bailey guilty of those charges. Bailey

---

[6] *Id.* at A720.

was sentenced to life imprisonment on the Murder in the First Degree charge, plus 18 years of unsuspended prison time for the remaining convictions. This appeal followed.

## STANDARD OF REVIEW

This Court reviews alleged constitutional violations arising from evidentiary rulings *de novo*.[7]

## DISCUSSION

Bailey's sole claim on appeal is that his right to confrontation under the Sixth Amendment of the U.S. Constitution was denied when the trial court excluded evidence of Hurley's juvenile adjudication for CCDW and his probationary status resulting therefrom. Delaware Rule of Evidence 609(d) forbids the admission of juvenile adjudications unless, in a criminal case, the evidence would be admissible for challenging an adult witness's credibility and is "necessary for a fair determination of the issue of guilt or innocence."[8]

In *Davis v. Alaska*,[9] the U.S. Supreme Court addressed how courts should balance the admissibility of juvenile adjudications and the requirements of the Confrontation Clause. The Court found that the Confrontation Clause requires that juvenile adjudications be admissible for making "more particular" attacks on witness

---

[7] *Stevenson v. State,* 149 A.3d 505, 509 (Del. 2016).
[8] D.R.E. 609(d).
[9] 415 U.S. 308 (1974).

credibility to "reveal[] bias, prejudices, or ulterior motives of the witness as they may relate directly to the issues or personalities in the case at hand."[10]

In *Reid v. State*,[11] this Court recognized that *Davis* distinguishes between evidence offered under Rule 609 to undermine credibility in a general sense, and evidence that shows a bias and a motive to be untruthful about the facts and circumstances of a specific case. The Confrontation Clause is not implicated where juvenile adjudications are used for *general* impeachment, but it is where "impeachment is used to establish specific bias."[12] *Reid* held that when a trial judge is called upon to balance the Confrontation Clause and Rule 609(d), the judge should ask whether the evidence of a juvenile adjudication is "(1) offered to show bias (i.e., the motive to lie in the specific case) and (2) important to the assertion of that bias."[13] This Court also stated that "[t]his second prong tracks the explicit requirement of Rule 609(d) that evidence be 'necessary for a fair determination of the issues of guilt or innocence.'"[14]

Therefore, the first determination under a Confrontation Clause analysis is whether the evidence of Hurley's juvenile adjudication and probationary status were offered to show a specific bias, or a motive to lie, as opposed to general

---

[10] *Id.* at 316.
[11] 2005 WL 3272134 (Del. Nov. 30, 2005).
[12] *Id.* at *4.
[13] *Id.*
[14] *Id.*

9

impeachment. Part of the defense's theory of the case was that Vann-Robinson was very aggressive and looking to fight that night. According to Bailey, Vann-Robinson reached into the car and pulled out a handgun, prompting Bailey to fire a warning shot into the air in self-defense. This theory is undermined by Hurley's assertion that neither he nor Vann-Robinson had a gun that night. Because of Hurley's probationary status for a prior CCDW adjudication, it is reasonable to conclude that Hurley would have a motive to be untruthful about whether he or Vann-Robinson was in possession of a handgun that night, if, in fact, either one of them did possess a handgun that night. Therefore, we find that this case is one where the defendant has shown that the proffered juvenile adjudication and probationary status were offered to show a specific bias and motive to be untruthful in this case, as opposed to impeachment, which undermines credibility only in a general sense.

The final determination is whether evidence of the juvenile adjudication is "important to the assertion of that bias."[15] Bailey contends that this second prong of the *Reid* test was not properly applied by the Superior Court, and that the court incorrectly focused on whether the evidence of Hurley's juvenile adjudication was "necessary for a fair determination of guilt."[16] The relevant inquiry, Bailey argues,

---

[15] *Id.*

[16] At trial, Bailey's attorney argued that Hurley's prior juvenile adjudication and probationary status should be admitted under Rule 609(d). He did not make a Confrontation Clause argument. The trial judge focused on the argument that Bailey's attorney made under Rule 609(d). We normally review decisions to admit or exclude evidence under the rules of evidence for abuse of discretion. The State has argued that plain error review should be applied because the

is whether the evidence is being used to show the witness's motive to lie in the specific case at bar. However, as we noted in *Reid*, the second prong of the *Reid* test tracks the Rule 609(d) requirement that the evidence be "necessary for a fair determination of the issue of guilt or innocence." As pointed out by Bailey in his Reply Brief, defense counsel made the same argument he does here: that the "purpose of the evidence was to attack Hurley's credibility, specifically Hurley's statement that he did not possess a gun on the night of the shooting."[17] Although the trial court utilized the 609(d) standard, it considered the same arguments we see here, and its finding that there were other means to support the defense's theory tracks the tests of the Confrontation Clause and *Reid*.

The trial court ruled that Bailey had other means, apart from Hurley's juvenile adjudication and resulting probationary status, to show that Hurley was motivated to testify falsely that neither he nor Vann-Robinson possessed a firearm when Vann-Robinson was killed. The other evidence included Hurley's peculiar conduct after the shooting. Despite the fact that Hurley and his seriously wounded friend, Vann-Robinson, were only a few feet from a police vehicle that had arrived on the scene, Hurley elected to drive away without making police contact because, as he said, he

---

Confrontation Clause argument was not expressly made below. Because we reasoned in *Reid* that the "fair determination" clause in Rule 609(d) tracks the second prong of the Confrontation Clause analysis, and we review constitutional claims *de novo*, we have applied *de novo* review in this appeal.

[17] Reply Br. at 1.

11

"was scared . . . [and] didn't want to go to the police."[18]  According to his testimony, he stopped at a Rite-Aid parking lot to move Vann-Robinson to the back seat, after which he went to a Wawa convenience store.  From there, he called his mother using his cell phone.  It was only after speaking with his mother that he drove Vann-Robinson to the hospital, arriving approximately one hour after the shooting.  The suspicious nature of Hurley's conduct in departing from the scene of the crime gave the defense an effective means of attacking Hurley's credibility or probing for bias.  It created a jury argument, which defense counsel used in his closing, that Hurley did not want the police to find a weapon or weapons in Vann-Robinson's vehicle.

There was also evidence that Hurley was dishonest with the police by telling them that his cell phone service had been disconnected, which was not true.  In addition, the police repeatedly questioned Hurley about handgun possession, implying that they did not believe his account that neither he nor Vann-Robinson had a firearm that night.  Hurley had also conducted internet searches about weapons, although he attributed that to music lyrics he was allegedly writing.  There was also evidence that Vann-Robinson had considered getting a handgun.  This other evidence is significant impeachment evidence that could be used to show that Hurley had a specific motive to lie.  Under these circumstances, we cannot say that the evidence of Hurley's juvenile adjudication and probationary status was of such

---

[18] App. to Opening Br. at 804.

importance to Bailey's claim of bias that the exclusion of the evidence violated the Confrontation Clause.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is **AFFIRMED**.