IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALLEXEA BLACKWELL, | § | |
| | § | No. 182, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 2108001151 (N) |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: June 5, 2024
Decided: August 15, 2024

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record below, and following oral argument, it appears to the Court that:

(1) A jury convicted Allexea Blackwell of two counts of State Tax Fraud, two counts of Tampering with Public Records First Degree, one count of Theft, one count of Attempted Theft, and two counts of Offering a False Instrument for Filing. The Superior Court sentenced Blackwell to serve six years at Level V incarceration suspended for one year at Level II probation. Blackwell now appeals her convictions.

(2) In February 2020, Blackwell filed her 2019 tax return with the State of Delaware. Her return triggered review by the Delaware Division of Revenue

("DOR") because she claimed $41,011 in itemized deductions—totaling more than 50% of her income.[1] On March 3, 2020, a DOR auditor, Vanessa Borges, sent a letter to Blackwell asking for more information about the itemized deductions. Blackwell responded by email and identified a series of checks, which reflected more than $40,000 in donations.[2] After further email communications with Blackwell, Borges became suspicious that some of the checks may have been falsified.[3] She then referred the matter to DOR Special Investigator David Smith.[4]

(3) Smith testified that he had 35 years of experience investigating tax-related wrongdoing for DOR.[5] Smith's standard procedure upon receiving a referral was to collect at least one year of the taxpayer's DOR official records—including W-2s, 1099s, and any other relevant tax documents—to look for "similarities or disparities."[6] In Blackwell's case, Smith subpoenaed Blackwell's 2019 M&T Bank records and compared them to statements that Blackwell provided via email.[7] The certified bank records differed substantially from what Blackwell provided to DOR.[8]

---

[1] App. to Opening Br. at A95, A72, A76 (Trial Tr.).
[2] *Id*. at A76–79, A87–89 (Trial Tr.).
[3] *Id*. at A79–84 (Trial Tr.).
[4] *Id*. at A84, A91 (Trial Tr.).
[5] *Id.* at A156 (Trial Tr.).
[6] *Id*. at A128–31 (Trial Tr.).
[7] *Id*. at A136–42 (Trial Tr.).
[8] *Id*.

(4)   Smith also reviewed Blackwell's 2018 tax return.[9]   Smith's investigation showed that on February 15, 2019, DOR auditor Patricia Thomas sent Blackwell a letter requesting documentation supporting the itemized deductions on her 2018 tax return.[10]  Blackwell responded to that letter the following day, providing checks purporting to prove the charitable donations in her itemized deductions.[11]  At that point, Smith noticed that the itemized deductions in the 2018 return were suspiciously similar to those in the 2019 return.[12]  To confirm his suspicions, Smith subpoenaed Blackwell's bank for copies of those checks.[13]   Ultimately, Smith's investigation showed that the checks that Blackwell submitted for both her 2018 and 2019 tax returns were the same.[14]

(5)   On August 30, 2021, a grand jury returned an indictment charging Blackwell with the following: two counts of State Tax Fraud in violation of 30 *Del. C.* § 575 in connection with false statements contained in her 2018 and 2019 tax returns; two counts of Tampering With Public Records First Degree in violation of 11 *Del. C.* § 876 in connection with the altered checks she provided to DOR in 2018 and 2019; Theft and Attempted Theft in violation of 11 *Del. C.* §§ 841 and 531 in connection with the fraudulent tax refunds she claimed in 2018 and 2019; and two

[9] *Id*. at A143 (Trial Tr.).
[10] *Id*. at A160–61 (Trial Tr.).
[11] *Id*. at A162–63 (Trial Tr.).
[12] *Id*. at A147 (Trial Tr.).
[13] *Id*. at A148 (Trial Tr.).
[14] *Id*. at A150–51, A163–64, A201–03 (Trial Tr.).

counts of Offering a False Instrument for Filing in violation of 11 *Del. C.* § 877 in connection with the falsified checks she submitted to DOR in 2018 and 2019.[15]

(6) The court held a two-day jury trial in May 2023, during which the State presented testimony from four DOR employees and Blackwell's friend, Brittany Santiago.[16] The State presented evidence that the checks Blackwell used to support her charitable donations were falsified and totaled only $1,072.60, rather than the tens of thousands of dollars that Blackwell claimed in 2018 and 2019.[17]

(7) During trial, Blackwell moved to dismiss the Tampering with Public Records charges, arguing that tax returns do not meet the criteria of a "public record" because public records are meant to be internal records.[18] In response, the State first pointed out that the indictment's tampering charge referred to the falsified checks, not the tax returns themselves.[19] The State next argued that the broad language in Section 876 encompassed any altered or falsified instrument submitted to DOR, including the checks that Blackwell sent to DOR personnel.[20] The court ultimately agreed with the State, holding that because Section 876 includes records "filed with" a public office, the checks that Blackwell submitted to DOR in connection with her 2018 and 2019 tax returns were public records.

---

[15] *Id.* at A7–11 (Indictment).
[16] *Id.* at A12, A195 (Trial Tr.).
[17] *Id.* at A149–51 (Trial Tr.).
[18] *Id.* at A19–20 (Trial Tr.).
[19] *Id.* at A21 (Trial Tr.).
[20] *Id.*

(8)    Blackwell also moved on hearsay grounds to exclude from evidence the 2018 letter that DOR sent to her.[21]  The Court overruled Blackwell's objection but required the State to provide additional foundation.[22]  As a result, Smith also testified to his knowledge and experience with DOR auditors and their audit procedures.[23]

(9)    The jury ultimately returned a guilty verdict on all eight counts.[24]  The court then sentenced Blackwell to serve one year at Level V incarceration, suspended for one year at Level II probation, for each of the first six counts, totaling six years at Level V suspended for one year at Level II.[25]  For purposes of sentencing, the court merged Counts VII and VIII with the State Tax Fraud convictions.[26]

(10)    Blackwell filed this appeal, challenging the court's denial of her motion to dismiss the tampering charges and her motion *in limine* to exclude the 2018 DOR letter and accompanying checks.

## I.    ANALYSIS

(11)    We review the Superior Court's denial of a motion to dismiss for abuse of discretion, but we review questions of statutory interpretation *de novo*.[27]  This Court also reviews the denial of a motion *in limine* for abuse of discretion,[28] but we

---

[21] *Id*. at A23, A151 (Trial Tr.).
[22] *Id*. at A154–55 (Trial Tr.).
[23] *Id*. at A156–59 (Trial Tr.).
[24] *Id*. at A252–53 (Verdict).
[25] *Id*. at A259–60 (Sentencing).
[26] *Id*. at A260 (Sentencing); *Id*. at A265 (Sentence Order).
[27] *Smith v. State*, 782 A.2d 267, 2001 WL 1006207, at *1 (Del. Aug. 7, 2001) (TABLE); *Hoennicke v. State*, 13 A.3d 744, 746 (Del. 2010).
[28] *Secrest v. State*, 679 A.2d 58, 61 (Del. 1996).

5

review *de novo* the court's holdings on evidentiary issues that concern constitutional rights, including the Confrontation Clause.[29]

## A. Blackwell was improperly indicted for tampering with public records under 11 *Del. C.* § 876.

(12)   Although Blackwell argued at trial and in her brief on appeal that personal tax returns and the supporting documents attached thereto do not constitute public records within the meaning of Section 876, she clarified during oral argument in this Court that she contends that the falsified checks do not fall within the meaning of Section 876 because they were altered before she submitted them to DOR.[30] Accordingly, Blackwell argues, the checks were not public records at the time she falsified them. This conduct, she asserts, falls outside the scope of Section 876.[31]

(13)   Title 11 § 876 provides that,

> A person is guilty of tampering with public records in the first degree when, with intent to defraud, and knowing that the person does not have the authority of anyone entitled to grant it, the person knowingly removes, mutilates, destroys, conceals, makes a false entry in or falsely alters any record or other written instrument *filed with*, deposited in or otherwise constituting a record of a public office or public servant.[32]

In contrast, 11 *Del. C.* § 877—Section 876's misdemeanor companion charge— provides that,

---

[29] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).
[30] Oral Argument at 3:22–3:40.
[31] *Id*. at 3:40–4:58.  The State has not argued that Blackwell waived this legal argument by failing to raise it in her briefs.  Although arguments first raised during oral argument are generally waived, *see* Supr. Ct. R. 14(b)(vi)(A)(3), we view Blackwell's position regarding the timing of the falsification as a clarification of her stance rather than an entirely new argument.
[32] 11 *Del. C*. § 876 (emphasis added).

A person is guilty of offering a false instrument for filing when, knowing that a written instrument contains a false statement or false information, and intending to defraud the State, a political subdivision thereof or another person, the person offers or presents it to a public office or a public servant with the knowledge or belief that *it will be filed with*, registered or recorded in or otherwise become a part of the records of the public office or public servant.[33]

(14) Read broadly, and in isolation, Section 876 could be understood to include documents falsified and then filed with a public office. But that broad reading is not possible when Sections 876 and 877 are read together, as they must be. The rules of statutory interpretation dictate that "[e]ach part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole."[34] Sections 876 and 877 differentiate between falsification of instruments that are "filed with" a public office and those that "will be filed" with a public office. Section 876 constitutes a felony because it arises when an individual falsifies an instrument that already is a part of a public record, whereas Section 877 constitutes a misdemeanor and encompasses falsification of an instrument that a defendant knows or believes will later become a public record.

(15) The State was unable to articulate how its broad interpretation of Section 876 requires a defendant to engage in different conduct than that identified

---

[33] 11 *Del. C.* § 877 (emphasis added).
[34] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 117 (Del. 2020); *See also Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) ("the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided.").

in Section 877.[35] Put another way, under the State's reading, Section 876—a felony—does not encompass any additional elements than Section 877—a misdemeanor. We are certain that this is not what the General Assembly intended when it crafted those statutes.

(16) Here, there is no dispute that the checks were not yet a public record at time Blackwell falsified them[36]—Blackwell edited them to reflect larger donations *before* she responded to DOR's requests to supplement her tax records to include supporting documents. Blackwell's conduct therefore falls within the scope of Section 877, not Section 876.[37] For those reasons, we reverse Blackwell's convictions for Counts III and IV.

## B. The Superior Court did not err in denying Blackwell's Motion *in Limine* as to Counts I and V.[38]

(17) During Blackwell's trial, the State sought to introduce the checks that Blackwell submitted in response to DOR's request for more information pertaining to the deductions that she claimed on her 2018 tax return. Specifically, in response

---

[35] The State suggested that Section 876 requires "an affirmative alternation" to the instrument, whereas Section 877 requires only that the defendant "file something that is false." Oral Argument at 21:00–21:30. This interpretation is not supported by the language of the statute.

[36] Oral Argument at 20:15–20:50.

[37] Blackwell does not contest that her conduct fell within Section 877. Oral Argument at 3:50–4:53.

[38] It is not entirely clear from Blackwell's oral motion *in limine* or her opening brief on appeal which documents she challenged. Her briefing only specifies that the motion *in limine* sought to exclude evidence used to prove the charges linked to her 2018 tax return. Opening Br. at 2. As a result, we consider the admission of both the DOR letter and Blackwell's checks because they are referred to interchangeably throughout the briefing.

8

to DOR's request for documentation supporting the charitable gifts that Blackwell listed as itemized deductions, Blackwell submitted copies of her W-2s as well as five checks totaling $45,600 that she purportedly wrote to various charities.[39] At trial, Thomas was not available to authenticate the letter or the checks that Blackwell submitted in response, but Smith testified about DOR's common practice of sending letters requesting supporting documents when questions arise regarding a filer's tax return.[40]

(18) On appeal, Blackwell raises a host of evidentiary challenges related to the admission of the letter from Thomas and the checks that Blackwell sent to DOR in response.[41] To start, to the extent that Blackwell challenges the admissibility of the checks that she wrote, signed, and sent to DOR on the basis of hearsay, authentication, and the Confrontation Clause, we affirm the trial court's ruling admitting them.[42]

(19) The checks that Blackwell wrote cannot constitute hearsay because they are an admission by a party opponent—a bright-line exclusion to the hearsay definition.[43] We address below Blackwell's authentication challenge and conclude

---

[39] State's Ex. 12.
[40] App. to Opening Br. at A143–59 (Trial Tr.).
[41] State's Ex. 12.
[42] Blackwell's brief does not distinguish between the checks that she sent to DOR in response to the letter and the letter itself. We address the two categories separately because the checks that Blackwell wrote are governed by different evidentiary rules than the letter that Blackwell received from the DOR auditor.
[43] D.R.E. 801(d)(2)(A).

that Smith's testimony laid a proper foundation for both the checks and the letter. And, to the extent that Blackwell challenges the checks' admission on Confrontation Clause grounds, we affirm the trial court's holding because the admission of a defendant's own out-of-court statement does not violate the Confrontation Clause.[44]

(20) Next, to the extent that Blackwell challenges the admissibility of Patricia Thomas's letter on the same evidentiary grounds, we affirm the trial court's admission of that evidence.

(21) As to authenticity, before admitting the challenged evidence, the Superior Court required the State to lay an extensive foundation through Smith to authenticate the checks and letter.[45] Blackwell objected on the basis of authentication when the State first attempted to move the letter and checks into evidence, and the court then required the State to elicit testimony from Smith about (i) how the checks got into the DOR file, (ii) Smith's audit, (iii) Smith's procedures and practices, and (iv) Smith's personal knowledge of DOR's procedures for asking filers for supporting documentation.[46] Smith then testified that, in his personal experience: tax auditors send letters to filers "every day" asking for additional information; these letters are "standard"; taxpayers "routinely" respond to the letters;

---

[44] *Gusmao v. State*, 48 So.3d 93, n.1 (Fla. Dist. Ct. App. 2010) ("the Sixth Amendment's Confrontation Clause is in no way implicated when the state offers a defendant's own out-of-court statements as evidence at trial.").

[45] App. to Opening Br. at A154–55 (Trial Tr.).

[46] *Id.*

this process occurs before Smith becomes involved in an investigation; when an auditor receives a response they save the responsive documents in the DOR official record; Smith's investigations require him to review a taxpayer's official file; and that procedure was followed in Blackwell's case.[47] After eliciting that testimony, the State renewed its application to admit the 2018 letter and checks into evidence, and the trial court held that the State had met its burden under Rule 901. Because the court required the State to lay an extensive foundation, and because Rule 901 only requires that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is,"[48] the Superior Court did not abuse its discretion in holding that the documents were properly authenticated.

(22) Turning to Blackwell's hearsay and Confrontation Clause arguments, the Superior Court denied her motion *in limine* on the basis that the DOR letter (i) fell within the public or business records hearsay exceptions; and (ii) did not violate the Confrontation Clause because, although Thomas did not testify, multiple DOR auditors and investigators were available for cross-examination.[49] Although the court was satisfied that the 2018 DOR record constituted a public or business record because the checks were obtained for administrative purposes,[50] rather than criminal

---

[47] *Id*. at A157–59 (Trial Tr.).
[48] D.R.E. 901(a).
[49] App. to Opening Br. at A28 (Trial Tr.).
[50] *Id*. at A158 (Smith testifying that the letter was part of an "administrative audit.").

investigative purposes, we need not reach that issue because the letter was not hearsay. The letter that Thomas sent to Blackwell stated, in pertinent part, that "[a]dditional information is needed for the processing of your State of Delaware Personal Income Tax Return. . . . In order to facilitate this process, please provide copies of all receipts and cancelled checks to substantiate deductions taken on the form(s) for the categories below."[51] The State did not offer the letter as an assertion, but rather because it elicited a response from Blackwell in the form of the checks she sent.[52] Put differently, the letter was a request, a common example of a statement not offered for the truth of the matter asserted.[53]

(24) The same analysis defeats Blackwell's Confrontation Clause argument because "[t]he confrontation clause does not apply to out-of-court statements not offered for their truth."[54] As the United States Supreme Court has remarked,

---

[51] State's Ex. 12.

[52] See *Edwards v. State*, 925 A.2d 1281, 1286 (Del. 2007) (quoting *United States v. Saada*, 212 F.3d 210, n.8 (3d Cir. 2000) ("Where 'the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay.'")).

[53] AM. JUR. 2D Evidence § 655. Hearsay Evidence defined ("Orders and threats, for example, are not "hearsay," since they are not declarations of fact capable of being true or false, and cannot be offered to prove a matter asserted."); CJS Evidence § 359 Definition and nature of hearsay or unsworn statement ("A statement that is not an assertion, is not hearsay, such as a command which is not assertion of fact, an order or instruction, or an inquiry."). *See also People v. Jones*, 579 N.W.2d 82, 87 (Mich. Ct. App. 1998) ("'come out' contains no assertion. It is incapable of being true or false. It is a command, not an assertion, and cannot be hearsay because it doesn't qualify as a 'statement.'"); *State v. Guerra*, 497 P.3d 1106, 1121 (Idaho 2021) ("These statements were commands and because they were not capable of being proven true, they do not constitute hearsay.").

[54] *Crawford v. Washington*, 541 U.S. 36, n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

12

> Neither a hearsay nor a confrontation question would arise had [the witness's] testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.[55]

Accordingly, we affirm the Superior Court's denial of Blackwell's motion *in limine*.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED as to Counts III and IV and AFFIRMED as to the remaining Counts.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[55] *Dutton v. Evans*, 400 U.S. 74, 88 (1970).