IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KYLE GREEN, | § | |
| | § | No. 368, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. No. 2206000331 |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: August 14, 2024
Decided: September 9, 2024

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## ORDER

On this 9th day of September, 2024, after consideration of the parties' briefs and the record below, it appears to the Court that:

(1) This appeal arises out of Kyle Green's convictions for offenses related to a physical altercation involving Jaiere Hickman and Nasir Hickman-Green. After a jury found Green guilty of Aggravated Menacing, Possession of a Deadly Weapon During the Commission of a Felony (PDWDCF), and Resisting Arrest, the Superior Court sentenced him to an aggregate of eight years of incarceration, suspended after seven years for decreasing levels of supervision.

(2) Green now appeals his conviction, arguing that the court erred when it allowed the State to introduce Nasir's out-of-court statements to law enforcement.

During trial, Green argued that Nasir's out-of-court statements were testimonial and that their admission violated Green's confrontation rights under the Sixth Amendment. The court rejected Green's objection, holding that the statements—admitted as present sense impressions and excited utterances—were nontestimonial and their admission therefore was constitutional under settled precedent. For the reasons that follow, we affirm Green's convictions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

(3) The State presented the following evidence at trial. In June 2021, Jaiere Hickman ("Jaiere") and Nasir Hickman-Green ("Nasir") were playing a video game at their respective residences and communicating via headsets.[1] Jaiere and Nasir are half brothers.[2] Jaiere overheard Nasir arguing with his uncle, Green, and heard Nasir exclaim, "I'm going to kill him[.]"[3] Jaiere then heard a commotion and, after receiving no response when he asked if Nasir was "OK," drove to Nasir's house to de-escalate the situation.[4]

(4) When Jaiere arrived at the house, he saw Nasir walking toward Green, who was about a block away.[5] Once Nasir caught up to Green, he demanded his phone and pushed Green.[6] Jaiere caught up to the two men, at which point Nasir

---

[1] App. to Opening Br. at A37.
[2] *Id*. at A36.
[3] *Id*. at A50.
[4] *Id*. at A37–38; A40.
[5] *Id*. at A41.
[6] *Id*. at A45–46; App. to State's Answering Br. at B1 00:18 (Ring Video).

punched Green.[7]  Green turned around and punched Jaiere.[8]  After the initial punch, Green swung the kitchen knife he was holding at Jaiere.[9]  The knife came within "a couple [of] inches from [Jaiere's] throat" and scared him.[10]  Jaeire told Green to drop the knife, and Green did so.[11]  All three then "were kind of fighting and tussling a little bit" until the police arrived.[12]

(5)  Delaware State Police Trooper Sean Setting ("Trooper Setting") was dispatched to the scene by a 911 call placed by Nasir's mother, who reported a domestic dispute involving knives or weapons.  Trooper Setting was the first officer on the scene and he observed three people fighting in the roadway with fists.[13]  Trooper Setting was the lone officer present and did not know where the knife was,[14] so he "drew his taser" and "instructed all three to just lay on their stomachs while [he] wait[ed] for additional units."[15]  Jaiere and Nasir complied, but Green began to walk away.[16]  Trooper Setting used his taser to stop Green.[17]  Once other law enforcement officers arrived, Trooper Setting turned the three men over to the New

[7] App. to State's Answering Br. at B1 00:26 (Ring Video).
[8] App. to Opening Br. at A42.
[9] *Id*. at A42–43.
[10] *Id*. at A44; A48.
[11] *Id*. at A45.
[12] *Id*. at A45.
[13] *Id*. at A28–29.
[14] The only information Trooper Setting had when dispatched to the scene was that it involved a physical domestic dispute and possibly a knife.  *Id*. at A28.
[15] *Id*. at A29.
[16] *Id*. at A29–30.
[17] *Id*. at A30.

Castle County Police.[18] One of the officers, Cpl. Jessica Neipris, testified that Green was "belligerent and agitated" when she arrived at the scene.[19]

(6)   New Castle County Police Officer White was the chief investigating officer. Officer White's body-worn camera captured his arrival on the scene and Nasir's statements in the minutes that followed.[20] Sirens were audible on the video as a Delaware State Trooper pulled up next to Officer White and both the trooper and Officer White went to assist the other officers.[21] Jaiere, Nasir, and Green were all face down on the ground and were not yet handcuffed.[22] Several other people were standing along the roadside.[23] Officer White told Nasir to put his hands behind his back and he complied.[24] Nasir spontaneously said, "This (expletive) tried to stab me. Took my mom's phone and we [are] being treated like we the criminals."[25] Officer White told Nasir to roll over on his side and to put his legs up toward his chest.[26] As Officer White patted Nasir down, Nasir stated, "He got my mom's phone in his pockets" and "Take my mom's phone out of his pockets."[27] Nasir continued, "I wasn't fighting him. I laid not one hand on that man. He tried to stab my brother

---

[18] *Id*. at A31.
[19] *Id*. at A57.
[20] App. to State's Answering Br. at B2 (Body Worn Camera).
[21] *Id*. at 00:32–00:50.
[22] *Id*. at 00:49–00:57; 01:13–01:15.
[23] *Id*. at 00:47.
[24] *Id*. at 01:00.
[25] *Id*. at 01:09.
[26] *Id*. at 01:20.
[27] *Id*. at 01:31.

4

with a knife."[28]  Nasir asked Officer White why he was in handcuffs, and Officer White replied, "Because we don't know what's going on.  And when we figure out what's going on, we'll sort it out.  If you can come out of handcuffs, you will."[29] Officer White then walked Nasir to a police vehicle while Nasir told Officer White multiple times to get his mother's phone from Green, as well as his phone and his little brother's phone.[30]

(7)  Once Nasir was seated in the police vehicle, Officer White asked if he lived there, and Nasir replied that he lived there with his uncle and his mother.[31] Officer White asked Nasir to identify his mother.[32]  Officer White asked who another person was, and Nasir identified his brother.[33]  Nasir then continued, "He came because we [were] on a game and he heard my uncle try to stab me with a knife so he came from his house to help me."[34]

(8)  Later, one of the Delaware State troopers found two knives—a steak knife with the handle broken off and a butter knife—on the road.[35]  Cellphones were found in the grass and on the street about 10 to 15 feet away from Green.[36]

---

[28] *Id*. at 01:37.
[29] *Id*. at 01:39.
[30] *Id*. at 02:10.
[31] *Id*. at 02:40.
[32] *Id*. at 02:46.
[33] *Id*. at 02:53.
[34] *Id*. at 02:54.
[35] App. to Opening Br. at A96–97.
[36] *Id*. at A101.

(9) On September 12, 2022, a grand jury indicted Green for three counts of Aggravated Menacing; two counts of Theft; and one count each of Possession of a Deadly Weapon During the Commission of a Felony (PDWDCF), Resisting Arrest, and Offensive Touching.[37]

(10) The court held a two-day jury trial in May 2023. Before trial began, the State entered a *nolle prosequi* on one count of Aggravated Menacing and the Offensive Touching Charge.[38] During trial, the State sought to introduce police body-worn-camera footage that recorded Nasir's statements.[39] The court admitted the video over Green's objection.[40] The jury ultimately returned a guilty verdict on one count of Aggravated Menacing, PDWDCF, and Resisting Arrest.[41] The jury acquitted Green on the other charges, including all the charges for which Nasir was the alleged victim.[42] At sentencing, the court granted the State's motion to declare Green a habitual offender.[43] The court then sentenced Green to seven years of unsuspended Level V time.[44]

(11) Green filed this appeal, challenging his conviction and the court's decision to admit Nasir's out-of-court statements without determining his

---

[37] *Id.* at A1, A6.
[38] *Id.* at A1–2.
[39] *Id.* at A69.
[40] *Id.* at A69–79.
[41] *Id.* at A1; Opening Br. at 1; Answering Br. at 1.
[42] App. to Opening Br. at A153–54.
[43] *Id.* at A159.
[44] September 22, 2023 Sentence Order, Ex. B; App. to Opening Br. at A164.

availability to testify at trial and without giving Green the opportunity to cross-examine him.

## II.    ANALYSIS

(12)  This court reviews *de novo* the Superior Court's holdings on evidentiary issues that concern constitutional rights, including the Sixth Amendment's Confrontation Clause.[45]

(13)  The issue on appeal relates solely to the Confrontation Clause; although Nasir's out-of-court statements to police plainly constituted hearsay, Green conceded at trial that these statements qualified as both present sense impressions under D.R.E. 803(1) and excited utterances under D.R.E. 803(2).[46]  In this appeal, Green argues—as he did at trial—that the admission of Nasir's out-of-court statements violated Green's Sixth Amendment right to confront the witnesses against him.  We affirm the Superior Court's decision to admit this evidence because Nasir's statements were nontestimonial under *Crawford v. Washington*[47] and its progeny.

(14)  In *Crawford v. Washington*, the United States Supreme Court held that the Sixth Amendment's Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless [the witness]

---

[45] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).
[46] App. to Opening Br. at A72–73.
[47] 541 U.S. 36 (2004).

was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[48]  The court later clarified the meaning of a "testimonial" statement in *Davis v. Washington*, holding:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[49]

(15)  We affirm the admission of Nasir's statements because—to the extent they were made under interrogation[50]—they were nontestimonial since law enforcement's primary purpose was to respond to an ongoing emergency.[51]  Green

---

[48] *Id.* at 36, 53–54.

[49] 547 U.S. 813, 822 (2006); *Urquhart v. State*, 133 A.3d 981, 2016 WL 768268, at *3 (Del. Feb. 26, 2016) (TABLE).

[50] Under *Davis* and *Crawford*, statements may be "testimonial" depending on the primary purpose of the police interrogation.  By extension, a statement that was not in response to any interrogation would not fall within *Davis's* definition.  The trial court seemed to adopt that reasoning. *See* Oral Decision, App. to Opening Br. at A78–79.  But "interrogation" has been interpreted broadly, at least in the context of the Fifth Amendment, and may encompass law enforcement's non-verbal conduct. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Marine v. State*, 607 A.2d 1185, 1191 (Del. 1992).  Because we can resolve Green's appeal on the basis that the purpose of any purported interrogation was to address an ongoing emergency, we need not address the extent to which "interrogation" under the Confrontation Clause includes non-verbal conduct by law enforcement.

[51] Green correctly points out that the trial court's ruling initially seemed to conflate the statements' admissibility under the hearsay rules and the Confrontation Clause.  But the court later clarified that Nasir's "commentary" was not in response to any police questioning and therefore was not testimonial.  App. to Opening Br. at A78–79.  To the extent that the trial court's holding suggests that a present sense impression or an excited utterance could never be deemed inadmissible under the Confrontation Clause, our affirmance does not draw such a categorial determination.  Although some federal and state courts have concluded that excited utterances are nontestimonial by nature, most eschew an unconditional rule. *See United States v. Hadley*, 431 F.3d 484, 503–06 (6th Cir.

8

argues that Nasir may have had a motive to incriminate Green in a crime and exculpate himself from any prosecution, pointing to Nasir's threats to kill Green, which can be overheard in the recorded 911 call.[52] Green also contends that Nasir made his statements after the police had neutralized the situation and placed all participants in custody, and therefore no ongoing emergency existed.[53] The record, however, does not support either assertion.

(16) Green's first contention misunderstands the focus of our inquiry under *Davis*, which requires us to consider law enforcement's "primary purpose" in asking questions, not the declarant's motivations in answering. But, in any event, the body-worn-camera footage reveals Nasir's emotional state and outbursts, indicating that his statements were not the product of deliberate control or contemplation.[54] As the trial judge observed, Nasir was reacting to the police in a very excited manner, visibly sweating and agitated, and asking why he was handcuffed.[55] Nasir repeatedly

2005) (concluding excited utterances are nontestimonial); *United States v. Brun*, 416 F.3d 703, 707–08 (8th Cir. 2005) (determining excited utterances are nontestimonial); *Mungo v. Duncan*, 393 F.3d 327, 336 n.9 (2d Cir. 2004), cert. denied, 544 U.S. 1002 (2005) (suggesting in dicta that victim statements to police in the immediate aftermath of emergency are nontestimonial); *Leavitt v. Arave*, 383 F.3d 809, 830 n.22 (9th Cir. 2004), cert. denied, 545 U.S. 1105 (2005) (indicating in dicta that victim statements to police in emergencies are nontestimonial); *but see Brito v. United States*, 427 F.3d 61–62 (1st Cir. 2005) (rejecting a categorical rule and focusing on whether a reasonable declarant would understand legal implications of the statement); *United States v. Hadley*, 431 F.3d 484, 505 (6th Cir. 2005) (examining various cases and concluding that most state courts do not consider such statements to be testimonial.).

[52] Opening Br. at 13.
[53] *Id*.
[54] App. to State's Answering Br. at B2 02:34–03:22 (Body Worn Camera); A79.
[55] App. to Opening Br. at A78–79.

stated, without any prompting, that Green had his mother's phone, tried to stab his brother, took his red phone, and possessed three phones in total.[56] These spontaneous comments were made in the heat of the moment, without the opportunity for reflection or fabrication, and were directly related to the unfolding events.

(17) The record also does not support Green's assertion that there was no ongoing emergency when Nasir made the challenged statements.[57] The video footage captures sirens blaring in the background and shows Officer White and a Delaware State Trooper rushing to the scene,[58] where the situation was still unfolding and Green, Nasir, and Jaiere had not yet been handcuffed.[59] Without access to the Ring camera video or the actual 911 call, the officers only knew that they had been dispatched to a potential domestic incident involving weapons. They had no clear information on the number or identity of the individuals involved, leaving them uncertain if the three men fighting were the only participants.[60] Additionally, when Nasir asked why he was handcuffed, Officer White responded, "Because we don't know what's going on. And when we figure out what's going on, we'll sort it out."[61] This response confirms that the situation was far from clear and that Green's

[56] *Id.*
[57] Opening Br. at 13.
[58] App. to State's Answering Br. at B2 00:32 (Body Worn Camera).
[59] *Id.* at B2 00:49; 01:13 (Body Worn Camera).
[60] App. to Opening Br. at A27, A55, A90.
[61] App. to State's Answering Br. at B2 01:39 (Body Worn Camera).

statements were made while officers were attempting to understand and control an ongoing emergency.[62] The statements therefore were nontestimonial.

(18) Nasir's statements in the police vehicle come closer to being testimonial in the sense that the emergency dissipated as police began to gain control of the scene. But Officer White's questions remained focused on ascertaining the scope of an incident that involved as-yet unrecovered weapons and potentially unknown victims. Moreover, any arguable error in admitting the statements Nasir made in the police vehicle was harmless because they related solely to Green's alleged conduct toward Nasir, and Green was acquitted of those charges.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is affirmed.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[62] *See* App. to Opening Br. at A92 (Officer White testifying that he was "trying to figure out what was going on . . . because . . . you have two different agencies there and . . . a lot of moving parts and . . . confusion [about] what even happened.").

11